UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMPIRE MERCHANTS, LLC,

                 Plaintiff,

      -against-

CHARLES MERINOFF and
GREGORY BAIRD,

                Defendants.

**AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT
AND BREACH OF CONTRACT**

Index No.  16-CV-9590 (JMF)

     Plaintiff Empire Merchants, LLC ("Empire"), by and through its attorneys, Gibson, Dunn & Crutcher LLP, for its Complaint against Defendants Charles Merinoff and Gregory Baird, alleges as follows:

## NATURE OF THE ACTION

     1.     Empire brings this action to resolve a substantial and actual dispute about Defendants' demand for indemnification and advancement from Empire.  In letters and court pleadings Defendants here have demanded that Plaintiff indemnify them and advance legal fees for their costs of defense in a suit that is presently pending in the Eastern District of New York. Plaintiff denies that indemnification or advancement is required or appropriate under the applicable contract, which specifies that any dispute is to be adjudicated in a court in New York. Consequently, an actual and justiciable controversy has arisen that is ripe for this Court's resolution.

     2.     On September 20, 2016, Empire initiated a federal lawsuit in the Eastern District of New York against Defendants, the largest liquor wholesaler in Maryland, Reliable Churchill, LLLP ("Reliable Churchill"), and various liquor retailers in Maryland and New York, seeking

redress for their criminal scheme to smuggle tens of millions of dollars of alcohol from Maryland to New York, for sale in New York.  *See Empire Merchants, LLC v. Reliable Churchill LLLP, et al.*, No. 16-CV-5226 (ARR)(LB) (E.D.N.Y.) (the "Underlying Action").  This scheme directly harmed Empire, the largest distributor of alcohol in New York with exclusive rights to distribute many brands of alcohol in New York.  As a result, every case of liquor smuggled into New York through Defendants' scheme was a lost sale to New York distributors, including Empire, and further deprived New York State and City of substantial tax revenues.

3.      As alleged in the Underlying Action, at all relevant times Defendants Merinoff and Baird were officers and executives of Reliable Churchill and/or its parent companies, and were aware of and participated in the smuggling scheme in those capacities.  Although they were also at various times members of the Board of Managers of Empire, Empire's claims against them are not based on and did not arise from their service on Empire's Board.  Despite this, shortly after the filing of the Underlying Action, Defendants demanded that Empire—the very company they harmed by participating in the smuggling scheme—indemnify and advance their expenses in defending the Underlying Action.  To this end, Defendants here filed a declaratory judgment action in the Delaware Court of Chancery.  But Defendants' action violated an express forum selection clause requiring that any such action be brought in New York.  And it further suffered from the fatal defect that Defendants are not entitled to advancement or indemnification under the terms of Empire's LLC Agreement (attached hereto as Exhibit 1), because (1) any claims or losses arising from Defendants' misconduct did not arise "by reason of" Defendants' service on Empire's Board, and (2) Defendants are accused of engaging in conduct that amounts to fraud, bad faith, and/or willful misconduct, which the applicable agreement expressly excludes from indemnification and advancement.

4.      Accordingly, this Court should enter an order resolving this dispute, declaring that Defendants are not entitled to indemnification or advancement by Empire in the Underlying Action, and awarding Empire breach of contract damages for Defendants' violation of the forum selection clause of the LLC Agreement.

## PARTIES

5.      Plaintiff Empire Merchants, LLC is a Delaware limited liability company with its principal place of business at 16 Bridgewater Street, Brooklyn, New York 11222.  Empire is a joint venture formed on July 14, 2006, between Bulldog Ventures Ltd. ("Bulldog Ventures") and Charmer Industries, Inc. ("Charmer").  Bulldog Ventures is a domestic business corporation incorporated in New York with its principal place of business in New York.  Charmer is also a domestic business corporation incorporated in New York with its principal place of business in New York.  Bulldog Ventures and Charmer are the only members of Empire.

6.      Defendant Charles Merinoff resides in New Jersey.  Merinoff served as the Chief Executive Officer and Chairman of the Board of Managers of Sunbelt Holding, Inc., and Sunbelt Beverage Company, LLC (collectively, the "Sunbelt Entities"), which owned Reliable Churchill. On or about January 1, 2016, Merinoff became the Co-Chairman of Breakthru Beverage Group, LLC ("Breakthru"), which was formed by the contribution of equity interests from Sunbelt Holding, Inc. and Wirtz Beverage Holdings, LLC, along with other related entities.  Breakthru is now the ultimate parent entity of Reliable Churchill.  In these positions, at all relevant times Merinoff had oversight of decisions at Reliable Churchill.  From Empire's inception until November 9, 2015, he served on Empire's Board of Managers.

7.      Defendant Gregory L. Baird resides in South Carolina and, during times relevant to the Complaint, maintained a residence in Maryland.  Baird was President of Reliable Churchill from 1999 through the late 2000s, after which time he became an Executive Vice President of

Sales for the Sunbelt Entities and eventually the Charmer Sunbelt Group's Chief Operating

Officer.[1]  As Executive Vice President of Sales for the Sunbelt Entities, Baird was responsible

for and oversaw sales for Reliable Churchill through at least approximately 2010, when he

became Chief Operating Officer for the Sunbelt Entities.  On or about January 1, 2016, Baird

became the President and CEO of Breakthru.

### JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

this is an action between citizens of different states and the amount in controversy far exceeds

$75,000.  Indeed, counsel for Defendants has requested advancement of $300,000 for each

Defendant, with such amount to be replenished to cover ongoing legal fees and expenses.

Plaintiff Empire is a citizen of New York.  Its member entities Bulldog Ventures and Charmer

are citizens of New York.  Defendant Merinoff is a citizen of New Jersey, and Defendant Baird

is a citizen of South Carolina.  No member of Empire is a citizen of New Jersey or South

Carolina.  Thus, complete diversity of citizenship between the parties exists in this action.

9.     This Court has the power to grant declaratory relief under the Declaratory

Judgment Act, 28 U.S.C. §§ 2201, 2202.  A case of actual controversy within this Court's

jurisdiction exists between the parties concerning Defendants' rights under the LLC Agreement

to seek advancement and indemnification of fees from Plaintiff for defending against Plaintiff's

allegations against Defendants in the Underlying Action.  This controversy is sufficiently

immediate to warrant this Court's intervention to clarify and settle the legal relations at issue and

avoid future or further litigation, as Defendants have improperly filed an action for advancement

in the Delaware Court of Chancery in violation of the LLC Agreement.  A declaratory judgment

[1]  The "Charmer Sunbelt Group" is an affiliation of Sunbelt Beverage Company, LLC and Charmer.

4

is necessary and appropriate to resolve this dispute, which creates a real and immediate threat of injury to Plaintiff.

10.     Personal jurisdiction and venue are proper in this Court by operation of 28 U.S.C. § 1391 pursuant to the parties' consent and/or because a substantial part of the events or omissions giving rise to this action occurred in this District.  The forum selection clause of the LLC Agreement, under which this action arises, states in full:

> The parties hereto irrevocably:  (a) agree that any suit, action or other legal proceeding arising out of this Agreement shall be brought in the United States District Court for the Southern District of New York or in any courts of the State of New York sitting in the Borough of Manhattan, (b) consent to the jurisdiction of each such court in any suit, action or proceeding, (c) waive any objection which they, or any of them, may have to the laying of venue of any such suit, action or proceeding in any of such courts, and (d) agree that service of process by overnight courier or registered or certified mail, at the addresses specified pursuant to Section 12.3 hereof shall be good and sufficient service of process.  Each of the parties hereby irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or related to this Agreement.  Notwithstanding the foregoing, any legal proceeding arising out of this Agreement which, under the Act or, to the extent made applicable to the Company pursuant to this Agreement, the DGCL, is required to be brought in the Delaware Court of Chancery may only be brought in the Delaware Court of Chancery and the parties hereto hereby consent to the jurisdiction of the Delaware Chancery Court under such circumstances.

LLC Agreement (Ex. 1) § 12.6.  Because an advancement action is not "required to be brought in the Delaware Court of Chancery" by the Delaware Limited Liability Company Act or, to the extent the LLC Agreement makes it applicable to a particular provision, the Delaware General Corporation Law, this action is properly in this court.

11.     Personal jurisdiction over Defendants is also proper in this Court pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and NY CPLR §§ 301, 302(a)(1)–(3).

## FACTUAL BACKGROUND

12.    Empire is the New York metropolitan area's leading distributor of fine wines and spirits.  It has become the market leader through many years of hard work and quality service. Empire now counts over 10,000 restaurants, bars, hotels, nightclubs, and retail outlets among its customers, and it employs over 1,300 employees.  Indeed, some of the largest and best-known liquor and wine manufacturers in the world—including Diageo plc, Moet-Hennessy USA, Inc., Brown-Forman Corp., and E. & J. Gallo Winery—have historically relied on Empire to be their exclusive distributor in the New York metropolitan area.

13.    Since 2007, Empire has had an exclusive distribution contract with Diageo, the largest producer of liquor and spirits in the world, which produces notable brands such as Johnnie Walker, Crown Royal, Smirnoff, Ketel One, and Captain Morgan.  Thus, only Empire is permitted to sell those brands in the New York metropolitan area.  Given Empire's exclusive contracts with such major liquor manufacturers, it is estimated that, during the relevant time period, six out of every 10 bottles of spirits legally sold in metropolitan New York were distributed by Empire.

14.    Starting in at least 2008, two of the largest liquor wholesalers in Maryland— Reliable Churchill and Republic National Distributing Company ("RNDC") (collectively, along with their principals and agents, the "Maryland Wholesalers")—conspired with retailers in rural Cecil County, Maryland (the "Cecil County Retailers") and retailers in New York City (the "New York Retailers") to secretly ship alcohol products from Maryland to New York, for illegal sale in New York.  Specifically, the Maryland Wholesalers delivered millions of dollars of alcohol to Cecil County Retailers, who then sold the alcohol to complicit New York Retailers, who, in turn, secretly smuggled the alcohol in trucks across state lines to New York.  The direct victims of this criminal scheme were the New York distributors because every case of alcohol

smuggled into New York from Maryland was a lost sale by New York's authorized distributors—including Empire, the largest—with exclusive distribution arrangements to sell the very same alcohol that Reliable Churchill and RNDC smuggled into New York.

15.    The Maryland Wholesalers—Reliable Churchill and RNDC—were willful and knowing participants in this criminal scheme.  To conceal their participation in the scheme, they recruited and incentivized Cecil County Retailers to join the smuggling scheme and had the Cecil County Retailers take steps designed to hide their involvement from the public, regulators, and Empire Merchants.

16.    To avoid detection, the Maryland Wholesalers did not sell directly to out-of-state retailers.  Instead, they used and relied upon the Cecil County Retailers to secretly ship the Wholesalers' liquor to the New York Retailers for sale in New York.  This provided the Maryland Wholesalers cover to deny responsibility for their willful involvement, permitting them to disclaim knowledge of what happened to the goods once sold to the Cecil County Retailers and then illegally smuggling to New York by the New York Retailers.

17.    The Maryland Wholesalers, including Reliable Churchill, took elaborate steps to advance, protect, and conceal the bootlegging scheme.  For example, the Maryland Wholesalers, including Reliable Churchill, helped ensure that there were no labels or stickers on the cases of liquor that revealed the source of the liquor were the Maryland Wholesalers, including Reliable Churchill.  Typically, before a case of liquor is shipped to a local Maryland retailer, a sticker is placed on the case identifying the distributor of the liquor and other information that would reveal the Maryland source of the liquor.  The New York smugglers preferred to receive cases of liquor from the Cecil County Retailers without these labels, in order to avoid law enforcement and regulatory detection.  The Maryland Wholesalers, including Reliable Churchill, preferred to

have the stickers removed so that, once smuggled to New York, the alcohol could no longer be traced to the Maryland Wholesalers. The Maryland Wholesalers, including Reliable Churchill, knowing of the New York Retailers' objective in this regard, provided Cecil County Retailers the opportunity to order cases without labels on them, and explained to them that if the retailers ordered larger quantities (e.g., a pallet of liquor), there would be no labels on the cases. Even in smaller quantities that contained the stickers, the Maryland Wholesalers, including Reliable Churchill, assisted in the removal of the stickers by, for example, providing instructions to the Cecil County Retailers on methods for their removal, including advising them to use "a torch."

18.     The Maryland Wholesalers (and the local Cecil County Retailers) also used code words to hide their activities, referring to cases of liquor smuggled to New York as "going out the back door" and to New York smugglers as the people from "upstate" (understood as a euphemism for New York because there is no Maryland county "upstate" from Cecil County in Maryland). And many of the smugglers who drove across federal highways from New York to pick up liquor from the "back door" of Cecil County Retailers purposely used only first names to avoid identification.

19.     The criminal scheme was partially revealed in late May 2016, with the indictment of RNDC and a number of its co-conspirator employees for federal wire fraud and money laundering offenses arising out of this criminal bootlegging scheme. That indictment was the result of a multi-year investigation by the United States Attorney's Office for the District of Maryland, which also resulted in the conviction of eight (8) co-conspirators (primarily smugglers in New York and Maryland retailers) involved in the smuggling ring. While Reliable Churchill

was not indicted at that time, it has long been under investigation for the same smuggling activity

and negotiating to resolve potential charges against the company.[2]

### Plaintiff Sues Defendants in the Underlying Action

20.     On September 20, 2016, Empire filed a 105-page complaint detailing this

massive, eight-plus-year bootlegging scheme by the Maryland Wholesalers, the Cecil County

Retailers, the New York Retailers, as well as Sunbelt principals and executives, Defendants

Charles Merinoff and Gregory Baird, to illegally smuggle wine and spirits form Maryland to

New York (the "Bootlegging Scheme").

21.     On December 9, 2016, Empire filed a First Amended Complaint ("FAC")

(attached hereto as Exhibit 2) that refined and supplemented its factual allegations and added

new defendants and claims.  As alleged in the FAC, both Merinoff and Baird knowingly and

actively participated in the criminal enterprise.  Empire also alleges in the FAC that, after it filed

its initial Complaint, Merinoff and Baird conspired with Breakthru to systematically harass

Empire and its affiliate Empire North, LLC, in order to damage and threaten the viability of

Empire and Empire North and to retaliate against Empire for filing the Underlying Action.  The

claims asserted against Merinoff and Baird in the FAC arise solely from their misconduct on

behalf of the Sunbelt Entities and its wholly owned subsidiary Reliable Churchill.  In those non-

---

[2]  On or about October 28, 2016, the government, with the consent of all defendants, moved to dismiss the RNDC Indictment, and that motion was granted by the Court on October 31.  The dismissal was based not on the merits of the government's charges, but, rather, on "the conduct of counsel" and, in particular, the government's failure to timely disclose a conflict issue—namely, that the Assistant United States Attorney handling the matter was married to the agent who swore out the affidavit filed seeking attachments of RNDC's bank accounts.  The allegations against RNDC and Reliable Churchill remain meritorious.

Empire positions, Merinoff and Baird furthered the illegal bootlegging scheme, causing Empire severe financial and reputational harm and costing New York State millions of dollars in lost tax revenue.[3]

22.     Empire alleges in the Underlying Action that Merinoff "exercised ultimate control over important decisions at Reliable Churchill" as a result of his positions as CEO and Chairman of the Board of Managers of Reliable Churchill's parent entities, Sunbelt Beverage Company, LLC and Sunbelt Holding, Inc., *id*. ¶ 77, and in that capacity directed, participated in, and profited from the criminal bootlegging scheme.  *Id*. ¶¶ 23, 89 n.87, 244(b).  Empire further alleges that Merinoff—in his capacity as CEO and Chairman of the Board of the Sunbelt Entities, and based on Merinoff's unique expertise and knowledge about Reliable Churchill's activities—caused his agent and then-Executive Vice President and General Counsel of the Charmer Sunbelt Group to make material misrepresentations and/or omissions to Empire about the government's investigation of Reliable Churchill and Reliable Churchill's knowledge of the scheme, in order to benefit the Sunbelt Entities and to conceal the scheme from Empire and the public.  *Id*. ¶¶ 100–01, 204, 326.

23.     Empire alleges in the Underlying Action that Baird, as President of Reliable Churchill from 1999 through the late 2000s, "had control of day-to-day decisions and was heavily involved in setting sales targets and monitoring sales performance."  *Id*. ¶ 78.  Empire alleges that it was in this capacity as President of Reliable Churchill that Baird learned of Reliable Churchill's excessive sales to Cecil County, Maryland, yet did nothing to stop them.  *Id*.

---

[3]  Empire's original complaint asserted breach of fiduciary duty claims against Merinoff and Baird, and negligent misrepresentation and aiding and abetting claims against Merinoff, that potentially relate to their membership on the Empire Board.  Those claims have been removed from Empire's amended complaint, and the factual allegations supporting Empire's remaining claims have been amended as well.  Empire amended its original complaint to supplement its factual allegations and causes of action comprehensively throughout the pleading.

¶¶ 78, 99 & n.108.  Empire also alleges that it was in his capacity as executive vice president of sales with the Sunbelt Entities that Baird continued to be informed of excess sales to Cecil County Retailers after 2007, as a result of which he must have known that orders from Cecil County Retailers were being shipped out of state (because Cecil County, Maryland is far too small to support orders of such large quantities of alcohol).  *Id.* ¶¶ 78, 84.

24.    Based on these allegations, Empire's Amended Complaint asserts claims against Merinoff and Baird for tortious interference with contract, *id.* ¶¶ 301–08; deceptive trade practices in violation of New York General Business Law § 349, *id.* ¶¶ 309–13; unfair competition, *id.* ¶¶ 314–321; unjust enrichment, *id.* ¶¶ 331–43; and civil conspiracy, *id.* ¶¶ 344–53.  In support of those claims against Merinoff and Baird, Empire alleges that, in their respective roles at the Sunbelt Entities and Reliable Churchill, Merinoff and Baird contributed to a bootlegging scheme that:

- interfered with Empire's exclusive distribution contracts with suppliers to distribute certain products in New York, and further harmed Empire by causing suppliers to calculate contractual bonuses and penalties incorrectly because of improper distributions in New York, *id.* ¶¶ 304–05, 307;

- imported untaxed liquor into New York and usurped Empire's sales, *id.* ¶¶ 312, 338;

- resulted in out-of-state retailers misappropriating Empire's exclusive rights to distribute products to New York retailers, which rights Empire acquired through significant time, effort, and money, *id.* ¶¶ 316–18; and

- unjustly enriched its participants at the expense of Empire, *id.* ¶¶ 335–37.

25.    Empire also asserts against Merinoff a claim for common law fraud.  *Id.* ¶¶ 322–30. In support of that claim, Empire alleges that, in his capacity as an officer and director of the Sunbelt Entities, Merinoff:

- defrauded Empire with respect to government investigations, which prevented Empire from intervening in the bootlegging scheme sooner, *id.* ¶¶ 22, 329; and

- made material misrepresentations and/or omissions to Empire regarding the government's investigation into Reliable Churchill's excess sales to Cecil County Retailers and Reliable Churchill's knowledge that the excess alcohol was being smuggled into New York, *id.* ¶¶ 100–01, 204, 326.

**Defendants Demand Indemnification and Advancement**

26.     Section 5.5(b) of the LLC Agreement (Ex. 1) provides the sole basis for any

indemnification or advancement to the Defendants.  That Section provides, in relevant part:

> The Company . . . shall, to the fullest extent permitted by applicable law, indemnify, defend and hold harmless each Manager and each officer of the Company from and against any and all claims, suits, losses, judgments, damages, settlements, liabilities, fines, costs and expenses (including, but not limited to, reasonable attorneys' fees, litigation expenses and court costs) ("Losses") that may be made or imposed upon such Person by reason of the fact that such Person is or was a Manager or officer of the Company; provided, however, that no indemnification shall be provided hereunder to any such Person for any Losses arising out of such Person's breach of his or her duty of loyalty (as such concept is interpreted under the DGCL), act of fraud, bad faith or willful misconduct, or any action or transaction from which such Person derived an improper personal benefit.  The Company may also indemnify the employees, agents and the other persons who act on behalf or at the direction of the Company if such indemnification is approved by the Board of Managers, except in the circumstances set forth in the proviso in the previous sentence.  The Company shall pay the expenses as incurred by the Persons entitled to indemnification under this Section 5.5(b) in defending a civil or criminal action, suit or proceeding, upon receipt of a written undertaking by such Person to repay such payment if it shall be determined that such Person is not entitled to indemnification therefor as provided herein.

27.     On October 26, 2016, counsel for Baird and Merinoff—the very same counsel

representing Breakthru as outside litigation counsel and Reliable Churchill in the Underlying

Action—sent a letter to Empire seeking indemnification and advancement pursuant to Section

5.5(b) of the LLC Agreement and the advancement of $300,000 for each Defendant to cover the

amount of their retainers (which amount would need to be replenished to cover ongoing legal fees and expenses).  *See* Ex. 3 (O'Shea Letter).

28.     Plaintiff denied Defendants' request by letter dated October 28, 2016, based in part on the fact that Defendants are not "Persons entitled to indemnification under this Section 5.5(b)," as required by the advancement provision in Section 5.5(b) of the LLC Agreement, that Empire's claims against the Defendants did not arise "by reason of the fact that" either Defendant "is or was a Manager or officer of" Empire, and that Defendants' losses arise from their own acts of fraud, bad faith and/or willful misconduct.  *See* Ex. 4 (Mastro Letter).

29.     On November 18, 2016, Defendants filed a Verified Complaint in the Delaware Court of Chancery (the "Delaware Action"), seeking advancement of their legal fees and expenses relating to the Underlying Action, invoking Section 5.5(b) of the LLC Agreement.  *See* Ex. 5 (Delaware Complaint).

30.     Because, among other things, the Delaware Action was filed in an improper forum—the Delaware Court of Chancery rather than Manhattan federal or state court, as required by the LLC Agreement's mandatory forum selection clause, Section 5.5(b)—it is subject to dismissal.  Empire intends to move to dismiss the Delaware Action on December 12, 2016.

**Defendants Are Not Entitled to Indemnification or Advancement**

31.     Pursuant to Section 5.5(b) of the Agreement, Defendants are not entitled to advancement of their legal fees and expenses in connection with the Underlying Action unless they are "Persons entitled to indemnification under this Section 5.5(b)."  In other words, Defendants are not entitled to advancement unless Losses are imposed on them "by reason of the fact" that they were Empire Board Managers or officers, and the Losses do not arise from a

breach of the duty of loyalty, an act of fraud, bad faith, or willful misconduct, or any action or transaction from which he or she derived an improper personal benefit.

32.     In the Underlying Action, Empire asserts five amended claims against Merinoff and Baird arising from their participation in the bootlegging scheme detailed above:  intentional interference with contract (Count Four, Ex. 2 ¶¶ 301–08); deceptive trade practices (Count Five, *id.* ¶¶ 309–13); unfair competition (Count Six, *id.* ¶¶ 314–21); unjust enrichment (Count Eight, *id.* ¶¶ 331–43); and civil conspiracy (Count Nine, *id.* ¶¶ 344–53).  One additional claim is asserted only against Merinoff:  common law fraud (Count Seven, *id.* ¶¶ 322–30).

33.     None of these claims implicates Defendants' exercise of entrusted judgment, discretion, or decision-making authority on behalf of Empire, or otherwise arise "by reason of the fact that" Defendants were Managers on Empire's Board.  Rather, all of the claims arise from Defendants' alleged misconduct in their capacities as executives, officers, and/or agents of Reliable Churchill and/or the Sunbelt Entities, taken on behalf of those entities, and based on information obtained from or on behalf of those entities.

34.     Accordingly, any Losses in the Underlying Action are not imposed on Defendants "by reason of the fact" that they were Board Members of Empire.  Defendants therefore are not entitled to indemnification or advancement of expenses in connection with the Underlying Action.

35.     In addition, any Losses caused by Defendants' alleged misconduct resulted from Defendants' own bad faith and willful misconduct.  They are therefore not "Persons entitled to indemnification under this Section 5.5(b)" of the LLC Agreement and, consequently, are not entitled to advancement of their expenses.

36.     Upon information and belief, denying advancement to Defendants under the Agreement, pursuant to Section 5.5(b), would not prejudice Defendants in mounting a defense in the Underlying Action because Defendants have advancement and indemnification rights under other agreements with some or all of the Sunbelt Entities and/or Breakthru, which rights would entitle them to advancement of litigation fees and expenses for the Underlying Action.  *See, e.g.*, Ex. 6 (Sunbelt Holding, Inc. Certificate of Incorporation) § 9.  Moreover, because any Losses in the Underlying Action arose from Defendants' conduct in their roles as officers or executives of Sunbelt, any claims to indemnification and advancement would be appropriate only under Defendants' indemnification agreements with some or all of the Sunbelt Entities and/or Breakthru.

## COUNT I
### Declaratory Judgment as to Advancement

37.     Plaintiff repeats each of the allegations above as if fully set forth herein.

38.     The LLC Agreement states that advancement is available only for those "Persons entitled to indemnification under this Section 5.5(b)" of the LLC Agreement.  The LLC Agreement limits indemnification, and therefore advancement, to those Losses arising "by reason of the fact that such Person is or was a Manager or officer of the Company,"

39.     Indemnification, and therefore advancement, is also not available for Losses arising out of "an act of fraud, bad faith or willful misconduct."

40.     Defendants' conduct in the Underlying Action did not arise "by reason of the fact that" they were a Manager or officer of Empire but, rather, arose solely out of their conduct as officers and executives of the Sunbelt Entities.  They are therefore not entitled to advancement of expenses under the LLC Agreement.

41.     In addition, Defendants' conduct in the Underlying Action arose out of acts of fraud, bad faith, or willful misconduct.  Defendants are therefore not entitled to advancement of expenses under the LLC Agreement.

42.     An actual and justiciable controversy exists between the parties concerning Defendants' entitlement to advancement of their defense expenses.  A declaratory judgment issued by a court in the proper forum will eliminate the need for further legal action as it will settle the rights and obligations of the parties under Section 5.5(b) of the LLC Agreement.

## COUNT II
### Declaratory Judgment as to Indemnification

43.     Plaintiff repeats each of the allegations above as if fully set forth herein.

44.     The LLC Agreement states that indemnification is available only for Losses arising "by reason of the fact that such Person is or was a Manager or officer of the Company."

45.     Indemnification is also not available for Losses arising out of "an act of fraud, bad faith or willful misconduct."

46.     Defendants' conduct in the Underlying Action did not arise "by reason of the fact that" they were a Manager or officer of Empire but, rather, arose solely out of their conduct as officers and executives of the Sunbelt Entities.  They are therefore not entitled to indemnification.

47.     In addition, Defendants' conduct in the Underlying Action arose out of acts of fraud, bad faith, or willful misconduct.  Defendants are therefore not entitled to indemnification under the Agreement.

48.     An actual and justiciable controversy exists between the parties concerning Defendants' entitlement to indemnification of their defense expenses.  A declaratory judgment

issued by a court in the proper forum will eliminate the need for further legal action as it will settle the rights and obligations of the parties under Section 5.5(b) of the LLC Agreement.

## COUNT III
### Breach of Contract

49.   Plaintiff repeats each of the allegations above as if fully set forth herein.

50.   The LLC Agreement is an enforceable contract between Plaintiff and Defendants, who are third-party beneficiaries and/or closely related to the LLC Agreement, whose claims for advancement and indemnification arise from their standing relating to the LLC Agreement, and who are bound by the forum selection clause of the LLC Agreement.

51.   Plaintiff has performed all of the material conditions, covenants, and promises required of it by the LLC Agreement.

52.   The LLC Agreement contains a mandatory forum selection clause pursuant to which the parties irrevocably agreed "that any suit, action or other legal proceeding arising out of this Agreement shall be brought in the United States District Court for the Southern District of New York or in any courts of the State of New York sitting in the Borough of Manhattan," barring certain enumerated exceptions that are inapplicable to this dispute.

53.   Defendants breached this mandatory forum selection clause by filing an action arising out of the LLC Agreement in the improper venue, specifically an action for advancement and indemnification of litigation fees and expenses in the Delaware Court of Chancery.

54.   Plaintiff has suffered and will continue to suffer damages as a direct and proximate result of Defendants' breach of the LLC Agreement in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

1.     Declaring that Defendants are not entitled to advancement under Section 5.5(b) of the LLC Agreement for litigation fees and expenses incurred in defending against the Underlying Action;

2.     Declaring that Defendants are not entitled to indemnification under Section 5.5(b) of the LLC Agreement for litigation fees and expenses incurred in defending against the Underlying Action;

3.     Awarding Plaintiff general and compensatory damages according to proof at trial;

4.     Awarding Plaintiff costs and disbursements, including attorney's fees, related to this dispute;

5.     Granting such other and further relief as the Court deems just and proper.


Dated:  New York, New York
        December 21, 2016


                              GIBSON, DUNN & CRUTCHER LLP

                              By:     /s/ Randy M. Mastro_____
                                      Randy M. Mastro
                                      Lawrence J. Zweifach
                                      Avi Weitzman

                              200 Park Avenue
                              New York, New York 10166
                              Tel.:  (212) 351-4000
                              Fax:  (212) 351-4035
                              RMastro@gibsondunn.com

                              *Attorneys for Plaintiff Empire Merchants, LLC*

18