USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/08/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                 :

EMPIRE MERCHANTS, LLC,               :

                                 :

               Plaintiff,          :              16-CV-9590 (JMF)

                                 :

          -v-                     :              OPINION AND ORDER

                                 :

CHARLES MERINOFF, et al.,          :

                                 :

               Defendants.        :

                                 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In this diversity action, Plaintiff Empire Merchants, LLC ("Empire"), a liquor distributor, seeks a declaration that two of its former officers, Charles Merinoff and Gregory Baird, are not entitled to indemnification or advancement for their fees and costs in defending a lawsuit that Empire filed against them in the Eastern District of New York. (*See* Docket No. 8 ("Am. Compl.") at ¶¶ 37-48). Empire also brings a contract claim against Merinoff and Baird, alleging that they breached a forum selection clause in the parties' contract by filing suit in Delaware rather than here. (*See id.* ¶¶ 49-54). Now pending are cross-motions for partial judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, regarding two questions: whether Merinoff and Baird are entitled to advancement of their fees and costs and whether Empire is entitled to damages for breach of the parties' contract. For the reasons that follow, Empire's motion is GRANTED, and Defendants' motion is DENIED.

## BACKGROUND

Empire, a Delaware limited liability company, distributes wine and spirits in New York and is the exclusive distributor of several well-known alcohol brands, including Johnnie Walker

and Smirnoff. (Am. Compl. ¶¶ 12-13). Defendant Merinoff served on Empire's Board of

Managers from its formation in 2006 until November 9, 2015. (*Id.* ¶ 6). Defendant Baird was

also a member of Empire's Board of Managers, from January 1, 2012, to October 22, 2015.

(Docket No. 39 ("Mastro Decl."), Ex. F ("E.D.N.Y. Amended Complaint"), at ¶ 34).

Complicating matters, however, Baird and Merinoff had several roles in the alcohol industry

beyond their roles at Empire. Merinoff was the Chief Executive Officer and Chairman of the

Board of Sunbelt Holding, Inc. and Sunbelt Beverage Company ("Sunbelt"), which until 2016

owned Reliable Churchill LLP ("Reliable Churchill"), a liquor wholesaler in Maryland. (Am.

Compl. ¶¶ 6, 14). In 2016, Merinoff also became the Co-Chairman of Breakthru Beverage

Group, which is now the ultimate parent entity of Reliable Churchill. (*Id.* ¶ 6). For his part,

Baird was the Executive Vice President of Sales for Sunbelt, through which he oversaw sales for

Reliable Churchill until he became Chief Operating Officer of Sunbelt in 2010. (*Id.* ¶ 7). In

2016, Baird became President and CEO of Breakthru Beverage Group. (*Id.* ¶ 7).

The relationship between Empire and its Board members was and is defined by the

company's Limited Liability Company Agreement (the "LLC Agreement"). Two provisions of

that Agreement are relevant here. First, Section 5.5, titled "Liability of the Managers and

Officers; Indemnification" provides as follows:

> The Company . . . shall, to the fullest extent permitted by applicable law,
> indemnify, defend and hold harmless each Manager and each officer of the
> Company from and against any and all claims, suits, losses, judgments, damages,
> settlements, liabilities, fines, costs and expenses (including, but not limited to,
> reasonable attorneys' fees, litigation expenses and court costs) ("Losses") that
> may be made or imposed upon such Person by reason of the fact that such Person
> is or was a Manager or officer of the Company; provided, however, that no
> indemnification shall be provided hereunder to any such Person for any Losses
> arising out of such Person's breach of his or her duty of loyalty (as such concept
> is interpreted under the [Delaware General Corporation Law]), act of fraud, bad

faith or willful misconduct, or any action or transaction from which such Person derived an improper personal benefit. . . . The Company shall pay the expenses as incurred by the Persons entitled to indemnification under this Section 5.5(b) in defending a civil or criminal action, suit or proceeding, upon receipt of a written undertaking by such Person to repay such payment if it shall be determined that such Person is not entitled to indemnification therefor as provided herein.

(Mastro Decl., Ex. A ("LLC Agreement"), at § 5.5(b)).  Second, Section 12.6 provides that "any suit, action or other legal proceeding arising out of" the LLC Agreement "shall be brought" in this Court or a New York State court in Manhattan, except that any legal proceeding that, under Delaware law, "is required to be brought in the Delaware Court of Chancery may only be brought in the Delaware Court of Chancery."  (*Id.* § 12.6).

On September 20, 2016, Empire filed a lawsuit in the Eastern District of New York (the "E.D.N.Y. Action") against Reliable Churchill, Merinoff, Baird, and others.  (Am. Compl. ¶¶ 2, 20; Docket No. 45, Ex. 6 ("Original E.D.N.Y. Complaint")).  Empire alleged that Merinoff, Baird, and the other defendants participated in a long-term scheme to illegally smuggle wine and spirits from Maryland to New York in order to avoid paying New York's higher liquor excise tax and to undercut Empire's exclusive distribution of certain brands of liquor.  (Original E.D.N.Y. Complaint ¶ 1).  In the Original E.D.N.Y. Complaint, Empire also alleged that Baird and Merinoff breached their fiduciary duties as board members of Empire by participating in the scheme.  (*See, e.g.*, *id.* ¶¶ 84-85, 169).  For example, Empire specifically alleged that Merinoff and Baird "both breached their fiduciary duties to Empire," as "both men sat on Empire's Board of Managers and had knowledge that the bootlegging scheme was affecting Empire's financial well-being."  (*Id.* at ¶ 169; *see also id.* ¶ 170).

On December 9, 2016, Empire filed an amended complaint in the E.D.N.Y. Action. Once again, Empire again alleged that Merinoff and Baird furthered an illegal smuggling scheme

in their capacity as directors and officers of Sunbelt and Reliable Churchill. (E.D.N.Y. Amended Complaint ¶¶ 23, 99 n.108). The E.D.N.Y. Amended Complaint alleged that, notwithstanding Merinoff's role as an Empire Board member, "[b]ecause of the ownership structures of the different relevant entities, Merinoff profited more when Reliable Churchill made a sale, as opposed to when Empire made a sale." (*Id.* ¶ 23). It alleged also that Merinoff ultimately intended to weaken Empire in order to target it for acquisition by Breakthru Beverage Group. (*Id.*). Empire's contentions regarding Baird were sparser: It claimed that he knew of the smuggling operation, initially by virtue of his role as Reliable Churchill's President and, later, as Chief Operating Officer of Sunbelt. (*Id.* ¶ 99 n.108). The E.D.N.Y. Amended Complaint asserted claims against Merinoff and Baird for tortious interference with contract (*id.* ¶¶ 301-08), deceptive trade practices in violation of New York General Business Law Section 349 (*id.* ¶¶ 309-13), unfair competition (*id.* ¶¶ 314-21), unjust enrichment (*id.* ¶¶ 331-43), and civil conspiracy (*id.* ¶¶ 344-53). Notably, however, it did not include any claims for breach of fiduciary duty against Merinoff and Baird. (*See, e.g.*, Docket No. 45, Ex. 4, ¶ 208).

On October 26, 2016 — between the filing of the original complaint and the amended complaint — Merinoff and Baird demanded that Empire advance them funds to pay for their defense in the E.D.N.Y. Action, which they characterized as a suit "in connection with their positions as members of [Empire's] Board." (*See* Am. Compl., Ex. 3, at 1). Not surprisingly, Empire promptly refused. (*See* Am. Compl., Ex. 4, at 1 ("Surely, you are not seriously advancing this request in good faith.")). Merinoff and Baird then filed suit in the Delaware Court of Chancery, seeking to obtain advancement of the legal fees. (Am. Compl., Ex. 5). On February 2, 2017, however, the Delaware Court dismissed the case, finding that the "clear and

unambiguous language" of the LLC Agreement's "forum selection provision" required that the action to be brought in New York. (Mastro Decl., Ex. C, at ¶¶ 11-12). Thereafter, Empire commenced this action seeking a declaratory judgment that Merinoff and Baird are not entitled to advancement or indemnification. (Am. Compl. ¶ 1). Empire also seeks "breach of contract damages" stemming from Merinoff and Baird's violation of the forum selection clause by filing suit in Delaware. (*Id.* ¶ 4). Merinoff and Baird filed a counterclaim, demanding advancement of their fees to defend the E.D.N.Y. Action. (Docket No. 24, at ¶¶ 61-67).[1]

## LEGAL STANDARDS

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that governing motions to dismiss under Rule 12(b)(6). *See, e.g.*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). That is, the plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570. In applying these standards, however, a court must assume all of the plaintiff's "factual allegations to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Although the Court looks to federal law for the applicable pleading standards, it looks to

---

[1]       On March 16, 2017, the Honorable Allyne R. Ross dismissed Empire's federal claims in the E.D.N.Y. Action and declined to exercise supplemental jurisdiction over its state-law claims. *See Empire Merchants, LLC v. Reliable Churchill LLLP et al.*, 16-cv-5226 (ARR), Docket No. 170 (E.D.N.Y. March 16, 2017). Empire is appealing that decision. Neither party argues that the dismissal and appeal have any bearing on the issues presented here.

Delaware for substantive law, as the LLC Agreement expressly provides that it "shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the conflicts of law rules of said state." (LLC Agreement § 12.5).  Under Delaware law, when a contract "is clear and unambiguous, [courts] will give effect to the plain-meaning of the contract's terms and provisions." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010).  A contract is unambiguous if it is "fairly or reasonably susceptible to only one interpretation." *BLGH Holdings LLC v. enXco LFG Holding, LLC*, 41 A.3d 410, 414 (Del. 2012).  Where the provisions of a contract governing advancement are unambiguous, a court may resolve a dispute about entitlement advancement as a matter of law "based on a review of the pleadings against [the party seeking advancement] in the action for which advancement is sought." *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 167 (Del. Ch. 2003).

## DISCUSSION

The parties' cross-motions raise two questions: whether Merinoff and Baird are entitled to advancement of their fees and costs and whether they breached the LLC Agreement in filing the Delaware action.  (*See* Docket No. 40 ("Pl.'s Mem."), at 2-4; Docket No. 42 ("Defs.' Mem."), at 1-3)).[2]  The Court will address each question in turn.

### A.  The Advancement Claim

Section 5.5(b) of the LLC Agreement provides that, subject to certain exceptions, Empire must indemnify directors and officers from suits against them "that may be made or imposed upon such Person by reason of the fact that such Person is or was a Manager or officer of

---

[2]      Neither side seeks judgment on the pleadings with respect to the question of whether Merinoff and Baird are entitled to indemnification.  (*See* Docket No. 38, at 1).

[Empire]." (LLC Agreement § 5.5(b)). It also provides that Empire will "pay the expenses as incurred by" — that is, provide advancements to — "the Persons entitled to indemnification under this Section." (*Id.*). The parties disagree about whether the right to indemnification and the right to advancement are coextensive (Docket No. 46 at 6-9; Docket No. 47 ("Defs.' Opp'n Mem."), at 4-6), but they agree — and rightly so — that the "by reason of the fact" element applies to both. (Defs.' Opp'n Mem. 5-6). Thus, whether Merinoff and Baird are entitled to advancement turns (at least in the first instance) on whether the E.D.N.Y. Action was brought against them "by reason of the fact" that they were officers of Empire. Under Delaware law, that requirement is satisfied if there is "a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005). Put differently, "the requisite connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct." *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009) (internal quotation marks omitted).

Applying these standards here, there is little doubt that Merinoff and Baird would have been entitled to advancement based on the claims alleged in the Original E.D.N.Y. Complaint. After all, that complaint included a claim that Merinoff and Baird breached their fiduciary duties to Empire — duties that they would have had only "by reason of the fact that" they were officers of the company. *See, e.g.*, Oral Ruling in *Stengel v. Sales Online Direct, Inc.*, Civ. Action No. 1844B, Tr. at 102 (Jan. 2, 2001) (attached as Exhibit M to Docket No. 45). Significantly, however, "Delaware law recognizes the ability of a defendant corporation to moot an advancement dispute by removing any counterclaims that would trigger an advancement right for a former director or officer." *Mooney v. Echo Therapeutics, Inc.*, C.A. No. 10054-VCP, 2015

7

WL 3413272, at *6 (Del. Ch. May 28, 2015); *see also, e.g.*, *Danenberg v. Fitracks, Inc.*, C.A.

No. 6454-VCL, 2012 WL 11220, at *6 (Del. Ch. Jan. 3, 2012) (recognizing that a company can

amend its pleading to remove any claims that would trigger advancement, thereby mooting an

advancement dispute, but concluding that the defendant company had not succeeded in so

doing). Thus, whether Merinoff and Baird are entitled to advancement turns exclusively on the

claims asserted in the E.D.N.Y. Amended Complaint.[3]

Looking at the E.D.N.Y. Amended Complaint, the Court cannot discern how Empire's

claims against Merinoff and Baird could be viewed as brought "by reason of the fact" that

Merinoff and Baird were officers of *Empire*. The E.D.N.Y. Amended Complaint alleges that

through their involvement in Reliable Churchill and related Maryland businesses, Merinoff

"knowingly and actively participated in the bootlegging scheme for pecuniary gain," (E.D.N.Y.

Amended Complaint ¶ 23), and Baird "directed, and/or learned of, the bootlegging scheme in his

role as Reliable Churchill's President," (*id.* ¶ 99 n.108). None of the allegations against the two

implicates their positions as Empire officers; instead, they arise exclusively out of their positions

with Reliable Churchill and other Maryland entities. Indeed, as described and summarized in the

very first paragraph of the E.D.N.Y. Amended Complaint, the claims concern allegations that

Maryland companies affiliated with Merinoff and Baird "secretly ship[ped] alcohol products

---

[3]     At times, Merinoff and Baird appear to argue otherwise, stating, for example, that "Empire, having already triggered Defendants' advancement right, simply cannot put the toothpaste back in the tube by 'artful repleading.'" (Defs.' Mem. 15). Conspicuously, however, they fail to cite any Delaware precedent to support that argument. Each case they cite turned on the court's conclusion that the company's amended complaint did not go far enough to moot the advancement dispute, not on the proposition that a company cannot moot an advancement dispute though artful repleading. *See, e.g.*, *Brown v. LiveOps, Inc.*, 903 A.2d 324, 329 & n.25 (Del. Ch. 2006). If anything, those cases reinforce the proposition that an amended complaint *can* moot an advancement dispute. *See, e.g.*, *id.*; *Danenberg*, 2012 WL 11220, at *6.

from Maryland to New York, for illegal sale in New York." (*Id.* ¶ 1). Additionally, none of the specific allegations against Merinoff and Baird turns on their positions as Empire officers; instead, they are named as defendants *along with* the Maryland companies. In arguing otherwise, Merinoff and Baird place great emphasis on passing references in the E.D.N.Y. Amended Complaint to their affiliations with Empire — for example, that because Baird knew of the smuggling operation but "[n]ever told anyone at Empire . . . , Empire was misled and lulled into a false sense of security." (*Id.* ¶ 204). But such passing references are not enough to establish that Empire's actual *claims* are brought "by reason of the fact" that Merinoff and Baird were officers of Empire — particularly given that Empire has disclaimed reliance on its relationship with Merinoff and Baird as the basis of any duty underlying its claims. *See, e.g.*, *Xu Hong Bin v. Heckmann Corp.*, Civ. Action No. 4802-CC, 2010 WL 187018, at \*2 (Del. Ch. Jan. 8, 2010) (rejecting an advancement right based on the defendant company's "representations" that it was not pursuing, and would not pursue, applicable claims).

In short, the Court concludes that claims asserted against Merinoff and Baird in the E.D.N.Y. Amended Complaint do not trigger their rights to advancement under Section 5.5(b) of the LLC Agreement.[4]

## B. The Breach of Contract Claim

Next, Empire argues that it is entitled to judgment (in an amount to be determined) with

---

[4]     In light of that conclusion, the Court need not, and does not, reach Empire's alternative argument based on the language of Section 5.5(b) that "no indemnification shall be provided . . . for any Losses arising out of such Person's breach of his or her duty of loyalty . . . , act of fraud, bad faith or willful misconduct, or any action or transaction from which such Person derived an improper personal benefit." (*See, e.g.*, Pl.'s Mem. 13, 19-22). For the same reason, and because their request is premature, Merinoff and Baird's request for "fees on fees" for their costs in litigating this dispute (Defs.' Mem. 19-20) is denied.

respect to its claim that Merinoff and Baird breached the LLC Agreement's forum selection clause by filing suit in Delaware. (Pl.'s Mem. 22-24). To prove a claim for breach of contract, Empire must demonstrate "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Here, there is no real dispute that Empire satisfies the first two elements given the Delaware Court of Chancery's conclusion that Merinoff and Baird breached the LLC Agreement's "clear and unambiguous" forum-selection clause by seeking advancement in that court. (Docket No. 25-1, ¶ 12). Thus, the question of whether Empire is entitled to judgment on its contract claim turns on whether it has adequately pleaded damages. On this point, Merinoff and Baird make two arguments: first, that a party cannot recover attorney's fees under Delaware law for breach of a forum-selection clause and, second, that even if Delaware law does recognize such damages, Empire does not adequately plead such damages in its Complaint. (Defs.' Opp'n Mem. 13-16). Neither argument has merit.

First, as the Delaware Court of Chancery has observed, the Delaware Supreme Court has "implied that damages may be obtained for a breach of a forum selection clause." *Cornerstone Brands, Inc. v. O'Steen*, No. CIV.A. 1501-N (WBC), 2006 WL 2788414, at *4 (Del. Ch. Sept. 20, 2006) (citing *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 40 (Del. 1995)). In *El Paso*, the Delaware Supreme Court held that the plaintiffs could "recover the costs of . . . litigation" resulting from the breach of a forum-selection clause in a settlement agreement. *El Paso Nat. Gas Co.*, 669 A.2d at 40. Decisions of the Delaware Court of Chancery support this reading of *El Paso*. *See, e.g.*, *Cornerstone Brands*, 2006 WL 2788414, at *4; *Solak v.*

10

*Sarowitz*, 153 A.3d 729, 742 (Del. Ch. 2016) ("[The Delaware] Supreme Court implied that the

costs of litigation may be awarded as damages for breach of a forum selection clause.").

Merinoff and Baird suggest that *Solak* ultimately held otherwise (*see* Defs.' Opp'n Mem. 14),

but *Solak* is readily distinguishable as it relies on Section 109(b) of the DGCL, which does not

govern LLCs such as Empire. *See, e.g.*, *Hyatt*, 2016 WL 1301743, at *7 (recognizing that LLCs

are not subject to the DGCL).[5] Thus, the Court concludes that Delaware law recognizes the

costs of litigation as cognizable damages for a breach of contract action.

Merinoff and Baird's second argument — that Empire's pleading is insufficient — is

more compelling, if only because there are cases holding that boilerplate allegations along the

lines of Empire's here (namely, that it has "suffered and will continue to suffer damages as a

direct and proximate result of Defendants' breach of the LLC Agreement in an amount to be

proved at trial" (Am. Compl. ¶ 54)) are inadequate. *See, e.g.*, *Miller v. HSBC Bank U.S.A., N.A.*,

No. 13-CV-7500 (RWS), 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015) (concluding that the

plaintiff's "unsupported claim that she 'suffered damages' . . . is not enough to properly plead

the damages element of a breach of contract claim"). But determining whether a complaint

states a plausible claim to relief is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Additionally, the Court must draw all reasonable inferences in Empire's favor. *See, e.g.*,

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir.

2012). Doing so here, the Court concludes that is only one form of "damages" that Empire could

---

[5]     Merinoff and Baird also cite to this Court's decision in *Brown Rudnick LLP v. Surgical Orthomedics, Inc.*, No. 13-CV-4348 (JMF), 2014 WL 3439620, at *13-14 (S.D.N.Y. July 15, 2014) (Defs.' Opp'n Mem. 13-14), but that case involved an interpretation of New York law.

have suffered as a result of Merinoff's and Baird's breach of the forum-selection clause: the attorney's fees and costs that Empire incurred a result of the litigation in Delaware. Accordingly, its allegations suffice (and, by extension, it would elevate form over substance to require that Empire amend its complaint to make the nature of its "damages" clearer).

## CONCLUSION

For the reasons stated above, Empire's motion for partial judgment on the pleadings is GRANTED, and Merinoff and Baird's motion is DENIED. The parties shall promptly meet and confer and, no later than **November 15, 2017**, submit a joint letter to the Court proposing the next steps in this litigation and whether the Court should hold a conference.

The Clerk of Court is directed to terminate Docket Nos. 38 and 41.


SO ORDERED.

Date:   November 8, 2017
        New York, New York

_____
JESSE M. FURMAN
United States District Judge