UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
EMPIRE MERCHANTS, LLC,                                     :
:
    Plaintiff and Counterclaim-Defendant,                 :
:
    -against-                                             :
                                                                                                                     No. 16-CV-9590 (JMF) (SN)
CHARLES MERINOFF and                                       :
GREGORY BAIRD,                                             :
:
    Defendants and Counterclaim-Plaintiffs.               :
:
-----------------------------------------------------------x

**EMPIRE'S APPLICATION FOR AN AWARD OF ITS DAMAGES AS A RESULT OF DEFENDANTS' BREACH OF CONTRACT**

GIBSON, DUNN & CRUTCHER LLP

Randy M. Mastro
Lawrence J. Zweifach
Avi Weitzman

200 Park Avenue
New York, NY  10166-0193
(212) 351-4000
Fax:  (212) 351-4035

*Attorneys for Plaintiff and Counterclaim-Defendant Empire Merchants, LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

I. FACTUAL BACKGROUND ............................................................................................ 2

    A. Empire's Formation and Its LLC Agreement ........................................................ 2

    B. The Underlying EDNY Action ............................................................................... 3

    C. The Advancement Actions and Defendants' Breach of the Forum Selection Clause .................................................................................................... 3

    D. This Court Rules That Defendants Must Reimburse Empire Its Fees and Expenses ................................................................................................................ 5

ARGUMENT .................................................................................................................................. 7

I. As This Court Has Repeatedly Held, Empire Is Entitled to Recover the Attorneys' Fees and Expenses It Incurred Litigating the Delaware Action. ........................................ 7

    A. A Party Injured by a Breach of Contract Is Entitled to Recover All Damages That Arise Naturally from the Breach or That Were Reasonably Foreseeable at the Time the Contract Was Made. .................................................. 7

    B. All of Empire's Fees and Costs Arose Naturally from Defendants' Breach and Were Reasonably Foreseeable. ........................................................................ 9

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

Page

**Cases**

*Allendale Mut. Ins. Co. v. Excess Ins. Co.*,
    992 F. Supp. 278 (S.D.N.Y. 1998),
    *vacated on jurisdictional grounds*,
    172 F.3d 37 (2d Cir. 1999) ............................................................................................... 8

*Aveta Inc. v. Bengoa*,
    2010 WL 3221823 (Del. Ch. Aug. 13, 2010) .................................................................. 9

*Boeing Co. v. Spirit Aerosystems, Inc.*,
    2017 WL 6021423 (Del. Super. Ct. Dec. 5, 2017) ......................................................... 9

*Cornerstone Brands, Inc. v. O'Steen*,
    2006 WL 2788414 (Del. Ch. Sept. 20, 2006) ................................................................ 8

*Duncan v. TheraTx, Inc.*,
    775 A.2d 1019 (Del. 2001) ............................................................................................ 7

*El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*,
    669 A.2d 36 (Del. 1995) ................................................................................................ 8

*Genencor Int'l, Inc. v. Novo Nordisk A/S*,
    766 A.2d 8 (Del. 2000) ............................................................................................. 8, 10

*Granite Ridge Energy, LLC v. Allianz Global Risk U.S. Ins. Co.*,
    979 F. Supp. 2d 385 (S.D.N.Y. 2013) ........................................................................... 7

*Hartford Accident and Indem. Co. v. Village of Hempstead*,
    48 N.Y.2d 218 (1979) .................................................................................................. 11

*Henkel Corp. v. Innovative Brands Holdings, LLC*,
    2013 WL 396245 (Del. Ch. Jan. 31, 2013) .................................................................... 8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ....................................................................................................... 7

*Paul v. Deloitte & Touche, LLP*,
    974 A.2d 140 (Del. 2009) .............................................................................................. 8

*Rivers v. Deane*,
    619 N.Y.S.2d 419 (4th Dep't 1994) ............................................................................. 10

*Tackett v. State Farm Fire & Cas. Ins. Co.*,
    653 A.2d 254 (Del. 1995) .............................................................................................. 8

## TABLE OF AUTHORITIES
(continued)

Page

*Universal Enter. Grp., L.P. v. Duncan Petroleum Corp.*,
    2013 WL 3353743 (Del. Ch. July 1, 2013)..............................................................................8

*Wilkins v. Callahan*,
    2008 WL 11343078 (Del. Com. Pl. Oct. 30, 2008)................................................................10

**Other Authorities**

Stephen Waddams, DIMENSIONS OF PRIVATE LAW: CATEGORIES AND CONCEPTS IN
    ANGLO-AMERICAN LEGAL REASONING (2003) ........................................................................11

**Treatises**

Restatement (Second) of Contracts § 344......................................................................................10

## PRELIMINARY STATEMENT

This Court has now twice held, without qualification, that Defendants "Merinoff and Baird are liable to Empire for the fees and costs it incurred as a result of their breach of a forum-selection clause in filing another lawsuit, in the Delaware Court of Chancery." ECF No. 75 (Jan. 4 Order) at 1, 3; ECF No. 62 (Nov. 8 Order) at 9–12. Defendants' own wrongful conduct determined the scope of those fees and costs. By improperly filing suit in Delaware for tactical purposes, Defendants breached a "clear and unambiguous" forum selection clause. After Empire put them on notice that their Delaware Action was improper, Defendants continued to prosecute it, resulting in a dismissal two days after oral argument for improper venue. But Defendants did not stop there. They then needlessly caused Empire to incur additional losses, continuing to attempt to seal portions of the Delaware Court of Chancery's docket even after their suit was dismissed. Once again, they lost that motion. And even after this Court ruled that Empire is entitled to recover the fees and costs that Defendants imposed by filing suit in Delaware, Defendants tried to dodge responsibility yet again—unsuccessfully seeking reconsideration, this Court held, by "simply rehash[ing] arguments they previously made." Jan. 4 Order at 3.[1]

In short, Merinoff and Baird forced Empire to spend more than $745,000 in attorneys' fees and expenses defending a lawsuit that should never have been filed. Moreover, Empire has already taken steps to ensure the reasonableness of its recovery: it seeks recovery only at the hourly rates already discounted by Gibson Dunn and only of amounts actually billed and paid (not of indicated charges or any other amounts written off by Gibson Dunn).[2] Pursuant to governing Delaware law and this Court's orders, Defendants must now make Empire whole.

---

[1] To be clear, Empire does not seek any fees for expenses incurred in connection with this Action. It only seeks fees incurred litigating the Delaware Action.

[2] Moreover, Empire has not sought recovery here for several timekeepers who billed limited time to this matter.

1

I.  **FACTUAL BACKGROUND**

Because the relevant facts are largely undisputed and the Court is already fully familiar with the parties' prior arguments and the procedural history, Empire limits its discussion to only the most significant record facts for this application and otherwise respectfully incorporates by reference its prior pleadings and briefing.  *See* ECF Nos. 8, 40, 47, 71.

A.  **Empire's Formation and Its LLC Agreement**

Empire, the New York metropolitan area's leading distributor of fine wines and spirits, is a joint venture formed between Charmer Industries, Inc. and Bulldog Ventures Ltd.  ECF No. 8 ("SDNY Am. Compl.") ¶¶ 5, 12; ECF No. 39-6 ("EDNY FAC") ¶¶ 3, 74 & n.62.  Charmer was at all relevant times part of the group of affiliated entities known as the "Charmer Sunbelt Group," which included Sunbelt Holding, Inc. and Sunbelt Beverage Company, LLC (collectively, the "Sunbelt Entities").  SDNY Am. Compl. ¶¶ 6–7 & n.1; EDNY FAC ¶ 74.  The Sunbelt Entities owned Reliable Churchill, one of the largest liquor wholesalers in Maryland.  SDNY Am. Compl. ¶¶ 6–7; EDNY FAC ¶¶ 30, 74.  Charles Merinoff served as CEO and Chairman of the Board of Managers of the Sunbelt Entities.  SDNY Am. Compl. ¶ 6; EDNY FAC ¶ 32.  From 1999 through the late 2000s, Gregory Baird served as President of Reliable Churchill, after which time he worked for the Sunbelt Entities as Executive Vice President of Sales and ultimately COO of the Charmer Sunbelt Group.  SDNY Am. Compl. ¶ 7; EDNY FAC ¶ 34.

Charmer and Bulldog Ventures negotiated Empire's LLC Agreement, which defines the "relationship between Empire and its Board members."  Nov. 8 Order at 2.  Empire's LLC Agreement contains a "clear and unambiguous" forum selection clause stating, in part, that the parties "agree that any suit, action or other legal proceeding arising out of this Agreement shall be brought in the United States District Court for the Southern District of New York or in any courts of the state of New York  sitting in the Borough of Manhattan. . . ."  ECF No. 1-1 at § 12.6.

2

B.     The Underlying EDNY Action

On September 20, 2016, Empire filed a federal RICO lawsuit against Reliable Churchill and 20 other named defendants alleging that they perpetrated a massive, eight-year bootlegging scheme to divert wine and spirits illegally from Maryland into New York.  Empire alleges that Reliable Churchill and RNDC, two of the largest liquor wholesalers in Maryland, conspired with retailers in rural Cecil County, Maryland, and retailers in New York to ship alcohol products secretly from Maryland to New York, for illegal sale in New York.  EDNY FAC ¶ 1  This scheme resulted in Empire losing tens of millions of dollars of liquor sales and cost the State of New York millions in lost tax revenue.  *Id.* ¶¶ 5, 15.

Empire alleges that Defendants Merinoff and Baird—in their capacity as high-level executives at the Sunbelt Entities and Reliable Churchill—knew about, directed, participated in, and profited from the bootlegging scheme.  *Id.* ¶¶ 77, 99–100, 244(b).  It further alleges that "Merinoff—at first in his capacity as an executive of Charmer and the Sunbelt Entities, and then, as an executive of the Sunbelt Entities—arranged to have the Sunbelt Entities pay Empire CEO Lloyd Sobel substantial deferred compensation so that Sobel would be compromised to favor the Sunbelt Entities' interests over Empire."  *Id.* ¶ 23.  Based on those allegations, Empire asserted claims against Merinoff and Baird for intentional interference with contract; deceptive trade practices in violation of New York General Business Law § 349; unfair competition; unjust enrichment; and civil conspiracy; and asserted a claim against Merinoff for common law fraud.  *Id.* at ¶¶ 301–321, 331–353.

C.     The Advancement Actions and Defendants'
       Breach of the Forum Selection Clause

On November 18, 2016, Merinoff and Baird filed an action in the Delaware Court of Chancery demanding "advancement of their legal fees and expenses in defense" of the EDNY

3

Action. ECF No. 8-5 ¶ 2. That same day, they moved to expedite those proceedings in Delaware, seeking final disposition "'on the papers' within 45 days." Weitzman Decl. Ex. B at 3. Empire moved to dismiss the Delaware Action on December 12, 2016 pursuant to Rule 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim. *See* ECF No. 25-1 ¶ 2. Empire moved to dismiss on multiple grounds in the face of Defendants' motion for expedited summary disposition within 45 days. Indeed, on December 23, 2016, oral argument on Merinoff and Baird's motion for summary judgment in the Delaware Action was set to occur "on or before February 28, 2017." Weitzman Decl. Ex. C at 2 (Scheduling Order); *accord id.* Ex. D at 19:22–20:6 (Oral Argument Transcript).

On December 12, 2016, Empire commenced this SDNY Action against Merinoff and Baird seeking a declaration that Empire is not required to advance or indemnify them for legal fees related to the EDNY RICO Action, and for breach of contract damages stemming from Merinoff and Baird's violation of the forum selection clause by filing suit in Delaware. Dkt. 1 ¶¶ 37–54; Nov. 8 Order at 3.

Even after Empire notified Defendants that they had violated the plain language of the Agreement's forum selection clause, Defendants continued to prosecute the Delaware Action. They sought permission to brief a dispositive summary judgment motion concurrently with Empire's motion to dismiss—permission that the Delaware Court of Chancery denied. *See* Weitzman Decl. Ex. E at 1–2 (Letter from Merinoff and Baird to the Delaware Court of Chancery); *id.* Ex. C at 1 (Scheduling Order). They also sought to seal materials on the Delaware Court of Chancery's docket, including references to Reliable Churchill—another motion the Delaware Court of Chancery, along with this Court and the EDNY Court, ultimately denied. *See* Weitzman Decl. Exs. F–G (Motions to Seal); *id.* Ex. H (Order denying Motions to Stay).

4

On January 30, 2017, the Delaware Court of Chancery heard oral argument on Empire's motion to dismiss. Merinoff and Baird advanced a convoluted and unpersuasive interpretation of the LLC Agreement in an effort to justify their breach of the Agreement's forum selection clause. They asserted that stray references to the DGCL in "the LLC Agreement somehow incorporated the DGCL when addressing the parties' right to seek advancement." Dkt. 25-1 at ¶ 5. They next made the leap that Section 145(k) of the DGCL, "which vests the Court of Chancery 'with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnification brought under this section,'" permitted the filing of the action in Delaware Court of Chancery. *Id.* "And because the DGCL expressly designates the Court of Chancery, as among the courts of the State of Delaware, as the exclusive venue for advancement actions, [Merinoff and Baird] urge[d] the Court to conclude that the carve-out in Section 12.6 [of the LLC Agreement] applies and that venue is proper in [the Delaware Court of Chancery]." *Id.*

Only two days later, on February 2, 2017, the Court of Chancery decidedly rejected this tortured reading of the Agreement, held that Defendants had breached the Agreement's "clear and unambiguous" mandatory forum selection clause, and dismissed the Delaware Action. ECF No. 25-1 ¶ 12. The Court of Chancery held that Defendants' contrary interpretation was "fundamental[ly] flaw[ed]" and "stretche[d] the [clause] well beyond its terms." *See id.* ¶¶ 6, 10.

### D. This Court Rules That Defendants Must Reimburse Empire Its Fees and Expenses

On March 31, 2017, the parties filed cross-motions for judgment on the pleadings pursuant to Rule 12(c). Empire sought partial judgment on the pleadings for its contract claim and claim for declaratory judgment as to advancement. ECF No. 38. Defendants Merinoff and Baird sought judgment on the pleadings for "the Parties' Advancement Claims and Plaintiff's Breach of Contract Claim." ECF No. 41.

On November 8, 2017, this Court entered an Opinion and Order holding, as relevant here, that "Delaware law recognizes the costs of litigation as cognizable damages" for Defendants' breach of the Agreement's mandatory forum selection clause and granting that portion of Empire's Rule 12(c) motion. Nov. 8 Order at 11.[3] On November 22, 2017, Defendants moved for reconsideration of that ruling, arguing that the American rule precludes Empire's recovery of attorneys' fees and expenses as damages for Defendants' breach. ECF No. 69. On January 4, 2018, the Court denied Defendants' motion for reconsideration of that ruling, observing that Defendants "simply rehash arguments they previously made" and reaffirming without qualification that "Merinoff and Baird are liable to Empire for the fees and costs it incurred as a result of their breach of a forum-selection clause in filing another lawsuit, in the Delaware Court of Chancery." Jan. 4 Order at 1, 3.

As ordered by the Court, the parties met and conferred regarding Empire's application for the damages it incurred "as a result of Defendants' breach of contract." ECF No. 64 at 2; Weitzman Decl. ¶ 10. Empire informed Defendants of its damages estimate. Weitzman Decl. ¶ 10. In response, Defendants asserted that—notwithstanding the unqualified scope of this Court's repeated Orders—Empire may recover only those attorneys' fees and expenses incurred to litigate the issue of venue. *Id.* ¶ 11. When asked, defense counsel could not provide any legal basis for that asserted limitation, arguing that a contrary outcome would simply be "unfair." *Id.*

---

[3] On November 16, 2017, the Court ordered Empire to "file any fee application" concerning its "damages as a result of Defendants' breach of contract . . . within thirty days of . . . the Court's ruling on [the reconsideration] motion (if the Court denies it)." ECF No. 64.

6

# ARGUMENT

I. **As This Court Has Repeatedly Held, Empire Is Entitled to Recover the Attorneys' Fees and Expenses It Incurred Litigating the Delaware Action.**

Two separate courts—the Delaware Court of Chancery and this Court—have clearly and repeatedly held that Defendants breached the parties' Agreement by litigating in Delaware. And this Court has repeatedly held that the appropriate measure of damages resulting from that breach are "the attorney's fees and costs that Empire incurred as a result of the litigation in Delaware." Nov. 8 Order at 12; January 4 Order at 3. That ruling is unqualified—it does not limit Empire's recovery to only a portion of the fees and costs it incurred litigating any particular issue. In addition, the Court's ruling accords with black-letter Delaware law, which holds that a non-breaching party is entitled to recover all damages that follow naturally from a breach or that were reasonably foreseeable at the time of contract.

Thus, Empire now seeks a judgment of $747,807.38, the attorneys' fees and costs it was forced to spend as the natural and foreseeable result of Defendants' breach.

    A. **A Party Injured by a Breach of Contract Is Entitled to Recover All Damages That Arise Naturally from the Breach or That Were Reasonably Foreseeable at the Time the Contract Was Made.**

"[T]he standard remedy for breach of contract is based upon the reasonable expectations of the parties *ex ante*." *Duncan v. TheraTx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001).[4] This principle of expectation damages "should seek to give the nonbreaching . . . party the benefit of its bargain

---

[4] Delaware law applies to any dispute over the appropriate amount of contract damages. The Court has now twice resolved the breach of contract damages issue as a matter of substantive Delaware contract law. *See* Nov. 8 Order at 10–11; Jan. 4 Order at 3. In addition, New York's choice-of-law principles confirm that calculating breach of contract damages is governed by same substantive law furnishing the cause of action. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–97 (1941) (holding that a federal court sitting in diversity must apply the choice-of-law rules of the state in which that court sits); *Granite Ridge Energy, LLC v. Allianz Global Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 392 (S.D.N.Y. 2013) ("[W]here parties have validly chosen a state's law to govern their contractual rights and duties, that same state's substantive law will govern the measure of recovery for a breach of contract." (alterations and citation omitted)). In any event, the contract law principles cited here are consistent with New York law.

7

by putting that party in the position it would have been *but for the breach*." *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000) (emphasis added). Specifically, "the non-breaching party is entitled to recover 'damages that arise naturally from the breach or that were reasonably foreseeable at the time the contract was made.'" *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (quoting *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264–65 (Del. 1995)).

Following these legal principles, Delaware courts have held that the damages resulting from an improperly filed lawsuit in contravention of a forum selection clause include "the costs of that litigation" to the non-breaching party. *See El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 40 (Del. 1995) (holding the plaintiff "could raise the forum selection clause in the Settlement Agreement as a defense . . . and, if successful, recover the costs of that litigation"); *Cornerstone Brands, Inc. v. O'Steen*, 2006 WL 2788414, at *4 (Del. Ch. Sept. 20, 2006) (finding plaintiff is "entitled to prove its claim for damages based on [defendant's] alleged breach of the forum selection clause"). These costs of litigation include attorneys' fees. *See, e.g., Universal Enter. Grp., L.P. v. Duncan Petroleum Corp.*, 2013 WL 3353743, at *20 (Del. Ch. July 1, 2013) (awarding plaintiff its "actual damages" of $1,497,429, which included $126,946 in legal fees that the plaintiff had proved at trial it incurred remediating the defendant's breach of the relevant contract); *see also Henkel Corp. v. Innovative Brands Holdings, LLC*, 2013 WL 396245, at *6 (Del. Ch. Jan. 31, 2013) (awarding plaintiff its reasonable attorneys' fees pursuant to the terms of the agreement that defendant had breached); *Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 285–86 (S.D.N.Y. 1998) (awarding damages of $62,273.15, plaintiff's litigation costs from English action, when defendant breached forum selection clause requiring it to submit to jurisdiction in the United States), *vacated on jurisdictional grounds*, 172 F.3d 37 (2d Cir. 1999).

### B. All of Empire's Fees and Costs Arose Naturally from Defendants' Breach and Were Reasonably Foreseeable.

When they entered the LLC Agreement, the parties evinced a "clear and unambiguous" expectation that disputes arising out of the Agreement would be resolved in New York. ECF No. 39-3 at ¶¶ 11–12 (order granting Empire's motion to dismiss Delaware Action). By filing the Delaware Action, Defendants violated those clear expectations. As a direct and foreseeable result of Defendants' breach, Empire was forced to incur substantial attorneys' fees briefing and arguing numerous motions and applications in an improper forum—under significant time pressure and constrained by Defendants' demand by summary expedited resolution to boot. The Court's Orders—which, again, do not limit Empire's recovery as Defendants now propose—recognize that Defendants must make Empire whole for the damages they inflicted. *See* Nov. 8 Order at 11 ("[T]he Court concludes that Delaware law recognizes the costs of litigation as cognizable damages for a breach of contract action."); Jan. 4 Order at 1, 3 ("Merinoff and Baird are liable to Empire for the fees and costs it incurred as a result of their breach of a forum-selection clause in filing another lawsuit, in the Delaware Court of Chancery.").[5]

---

[5] Empire's fees are reasonable under the multi-factor test applied by Delaware courts in the related context of reviewing fee applications:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *4–*5 (Del. Ch. Aug. 13, 2010); *Boeing Co. v. Spirit Aerosystems, Inc.*, 2017 WL 6021423, at *3–*4 (Del. Super. Ct. Dec. 5, 2017). Additionally, Delaware courts consider whether (9) a client "did not know that it would be able to shift" attorneys' fees and therefore "had sufficient incentive to monitor its counsel's work and ensure that counsel did not engage in excessive or unnecessary efforts." *Aveta*, 2010 WL 3221823, at *6. Each of these factors support the reasonableness of Empire's fees in the Delaware Action.

In addition, Empire does not seek recovery of fees billed by several timekeepers, and Gibson Dunn has already discounted the hourly rates paid by Empire.

9

During the parties' meet and confer, Defendants asserted that Empire's recovery must be cabined to those fees incurred solely to litigate venue. That is incorrect. Defendants' breach—their improper filing in Delaware—was the "but for" cause of every dollar Empire spent litigating the Delaware Action. *Genencor*, 766 A.2d at 11 & n.3 (citing Restatement (Second) of Contracts § 344(a) as "defining 'expectation interest' as a party's interest in 'having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed'"). Because Defendants expressly sought (and received) expedited resolution of the Delaware proceedings—requesting that the parties be "heard 'on the papers' within 45 days from the date of the filing of the Complaint in this action," Weitzman Decl. Ex. B at 3—Empire was forced to brief its Rule 12(b)(6) motion concurrently with its 12(b)(3) motion. Moreover, Defendants themselves attempted to litigate in Delaware the underlying merits of their advancement claim at the same time as Empire's venue motion. *See id.* Ex. E at 6 ("Empire's attempt to delay the adjudication of [Merinoff and Baird]'s entitlement to advancement should be rejected. [Merinoff and Baird's] dispositive motion and Empire's motion to dismiss should be briefed simultaneously and, subject to the Court's availability, scheduled for argument at the end of January."). Thus, it was foreseeable to Defendants when they improperly filed their action in Delaware that Empire would be required to expend substantial resources to litigate both the impropriety of the Delaware forum and the merits of the advancement dispute at the same time.[6]

Finally, litigating the merits of the advancement dispute in Delaware forced Empire to incur expenses that it would not have otherwise incurred had Defendants litigated in the proper

---

[6] Indeed, courts routinely enter judgments in the amount of a services contract that a plaintiff enters into as a result of defendant's breach—services that fix or remedy the breach. *See, e.g.*, *Rivers v. Deane*, 619 N.Y.S.2d 419, 420 (4th Dep't 1994) ("The general rule in cases of faulty construction is that the measure of damages is the market value of the cost to repair the faulty construction."); *Wilkins v. Callahan*, 2008 WL 11343078 (Del. Com. Pl. Oct. 30, 2008) (damages included labor for repairs). Here, Empire hired Gibson Dunn to undo Defendants' breach of the LLC Agreement's forum provision.

forum. For example, Empire was required to engage local Delaware counsel, prepare for and present oral argument before the Delaware Court of Chancery, and travel to and from Delaware. Even if some of Empire's research on advancement was used during motion practice in the SDNY Action, the costs that Empire now seeks to recover were incurred in the Delaware Action, not the SDNY Action. Given that Defendants continued to prosecute the Delaware Action even after Empire placed them on notice of their breach, a damages award less than all of Empire's expenses would create perverse incentives—encouraging a breaching party to litigate aggressively in an improper forum, in violation of a forum selection clause, with the comfort that it will be held responsible for only a small portion of the damage it inflicted. *See* Stephen Waddams, DIMENSIONS OF PRIVATE LAW: CATEGORIES AND CONCEPTS IN ANGLO-AMERICAN LEGAL REASONING 153 (2003) ("The normal measure of compensatory damages aims at putting the plaintiff in the position it would have occupied if the contract had been performed, that is, it secures to the plaintiff the benefit of the bargain, or the 'expectation'. This has the effect of operating as an effective deterrent to breach in the great majority of cases, where the cost to the defendant of performance approximates the value of it to the plaintiff."); *see also Hartford Accident and Indem. Co. v. Village of Hempstead*, 48 N.Y.2d 218, 224 (1979) (discussing "a deterrent [effect] . . . inherent in the award of compensatory damages").

In sum, this Court's Orders are as unambiguous as Defendants' breach. Empire is entitled to be made whole and recover the fees and expenses it incurred litigating the improperly filed Delaware Action. In an effort to simplify its recovery, Empire seeks an award based on discounted hourly rates and which excludes multiple timekeepers. And Defendants have not advanced any basis, in law or fact, to justify restricting Empire's recovery in the manner they assert.

## CONCLUSION

For the foregoing reasons, Empire respectfully requests that the Court enter judgment against and order Defendants to pay, within fourteen days of this Court's order, Empire's attorneys' fees in the total amount of $747,807.38.

Dated:   New York, New York
　　　　February 5, 2018

　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP


　　　　　　　　　　　　　　　　By:   /s/ Randy M. Mastro
　　　　　　　　　　　　　　　　　　　Randy M. Mastro
　　　　　　　　　　　　　　　　　　　Lawrence J. Zweifach
　　　　　　　　　　　　　　　　　　　Avi Weitzman

　　　　　　　　　　　　　　　　200 Park Avenue
　　　　　　　　　　　　　　　　New York, NY  10166-0193
　　　　　　　　　　　　　　　　(212) 351-4000
　　　　　　　　　　　　　　　　Fax:  (212) 351-4035
　　　　　　　　　　　　　　　　rmastro@gibsondunn.com

　　　　　　　　　　　　　　　　*Attorneys for Plaintiff and Counterclaim-Defendant Empire Merchants, LLC*