UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPIRE MERCHANTS, LLC,<br><br>    Plaintiff,<br><br>  -against-<br><br>CHARLES MERINOFF and<br><br>GREGORY BAIRD,<br><br>    Defendants | No. 16-CV-9590 (JMF) |
| CHARLES MERINOFF and<br><br>GREGORY BAIRD,<br><br>    Counterclaim-Plaintiffs,<br><br>  -against-<br><br>EMPIRE MERCHANTS, LLC,<br><br>    Counterclaim-Defendant. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' APPLICATION
FOR ADVANCEMENT OF PRE-AMENDMENT FEES AND FEES-ON-FEES**

              BOIES SCHILLER FLEXNER LLP

              Sean F. O'Shea
              575 Lexington Avenue
              New York, New York 10022
              Tel: (212) 446-2300
              Fax: (212) 446-2350

              Helen M. Maher
              333 Main Street
              Armonk, New York 10504
              Tel: (914) 749-8200

              *Attorneys for Defendants Charles Merinoff and
              Gregory Baird*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

I. DEFENDANTS' REQUEST FOR PRE-AMENDMENT ADVANCEMENT IS REASONABLE AND WELL-SUBSTANTIATED ........................................................................................1

    A. Defendants Have Properly "Apportioned" Their Fees and There Is No Basis for Finding Those Fees Unreasonable ..................................................................1

        1. Empire's purported examples of non-advanceable work are without merit..............................................2

            i. Factual investigation of Empire's claims..................................2

            ii. Motion to dismiss Original Complaint ......................................2

            iii. Rule 11 Letter to Empire...........................................................3

            iv. Empire's Motion to Unseal........................................................3

        2. No Requirement to Produce Attorney Timesheets ................................3

    B. Empire's Allusions to Bad Faith and Sanctions Are Without Any Support ...............................................................5

    C. Empire's Belated Argument Regarding Standing is Without Merit....................................................................6

II. EMPIRE'S POSITION ON FEES-ON-FEES IS BASELESS ....................................6

    A. Empire's "Relevant Legal Standards" Do Not Support Its Position.................................................................6

    B. Defendants Are Entitled to All Fees Incurred in Their Successful Pursuit of Advancement, Including Those Fees Incurred in the Delaware Action ..................7

    C. Defendants' Fee Application Already Accounts for, and Appropriately Discounts, the Modest Amount of Fees Incurred for the Sealing Motions............................................................8

    D. Empire Proposes No Coherent Method for Calculating Fees-on-Fees....................................................................9

CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Citadel Holding Corp. v. Roven*,
    603 A.2d 818 (Del. 1992) ................................................................................................4

*Comm'r, I.N.S. v. Jean*,
    496 U.S. 154 (1990) ........................................................................................................8

*Concord Steel, Inc. v. Wilmington Steel Processing Co.*,
    2010 WL 571934 (Del. Ch. Feb. 5, 2010) ......................................................................9

*Danenberg v. Fitracks, Inc.*,
    58 A.3d 991 (Del. Ch. 2012) .......................................................................................5, 7

*DeLucca v. KKAT Mgmt. LLC*,
    2006 WL 224058 (Del. Ch. Jan. 23, 2006) ......................................................................6

*Fasciana v. Elec. Data Sys. Corp.*,
    829 A.2d 160 (Del. Ch. 2003) .....................................................................................1, 6

*Homestore v. Tafeen*,
    888 A.2d 204 (Del. 2005) ................................................................................................8

*In re Wise*,
    365 B.R. 516 (E.D. Pa. Bankr. Apr. 3, 2007) ..................................................................5

*In the Matter of the Petition of the State of
    Delaware for a Writ of Mandamus*,
    708 A.2d 983 (Del. 1998) ................................................................................................7

*Jackson v. Pollion*,
    733 F.3d 786 (7th Cir. 2013) ..........................................................................................9

*Levy v. HLI Operating Co., Inc.*,
    924 A.2d 210 (Del. Ch. 2007) .........................................................................................6

*Lieberman v. Electrolytic Ozone, Inc.*,
    2015 WL 5135460 (Del. Ch. Aug. 31, 2015) ..................................................................6

*Mooney v. Echo Therapeutics, Inc.*,
    2015 WL 3413272 (Del. Ch. May 28, 2015) ..................................................................1

*Moore v. Sec'y of Health & Human Servs.*,
    651 F. Supp. 514 (E.D. Mich. 1986) ...............................................................................5

*Nakahara v. NS 1991 Am. Tr.*,
    739 A.2d 770 (Del. Ch. 1998) ................................................................................5, 6, 8

*Pontone v. Milso Indus. Corp.*,
    100 A.3d 1023 (Del. Ch. 2014) .......................................................................................6

*Pontone v. Milso Indus. Corp.*,
  2014 WL 2439973 (Del. Ch. May 29, 2014) .................................................................. 1, 4

*Preferred Invs., Inc. v. T&H Bail Bonds*,
  2014 WL 1292362 (Del. Ch. Mar. 28, 2014) ..................................................................... 4

*Pribek v. Sec'y, Dept. of Health & Human Servs.*,
  717 F.Supp. 73 (W.D.N.Y. 1989) ....................................................................................... 5

*Revson v. Cinque & Cinque*, P.C.,
  221 F.3d 71 (2d Cir. 2000) .................................................................................................. 8

*Schoon v. Troy Corp.*,
  948 A.2d 1157 (Del. Ch. 2008) ........................................................................................... 6

*Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*,
  2009 WL 2501542 (Del. Ch. Aug. 5, 2009) ....................................................................... 4

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ......................................................................................................... 6

*Stifel Fin. Corp. v. Cochran*,
  809 A.2d 555 (Del. 2002) .................................................................................................... 6

*Tafeen v. Homestore, Inc.*,
  2004 WL 556733 (Del. Ch. Mar. 22, 2004) ....................................................................... 8

*Tafeen v. Homestore, Inc.*,
  2005 WL 789065 (Del. Ch. Mar. 29, 2005) ....................................................................... 2

*White v. Curo Tex. Holdings, LLC*,
  2017 WL 1369332 (Del. Ch. Feb. 21, 2017) ............................................................. 1, 4, 5, 6

*Zaman v. Amedeo Holdings, Inc.*,
  2008 WL 2168397 (Del. Ch. May 23, 2008) ................................................................. 2, 4

**Statutes**

28 U.S.C. § 1927 ..................................................................................................................... 11

42 U.S.C. § 1985 ....................................................................................................................... 8

**Rules**

Fed. R. Evid. 502(d) .................................................................................................................. 4

iii

I.  **DEFENDANTS' REQUEST FOR PRE-AMENDMENT ADVANCEMENT IS REASONABLE AND WELL-SUBSTANTIATED.**

  A. **Defendants Have Properly "Apportioned" Their Fees and There Is No Basis for Finding Those Fees Unreasonable.**

Empire's contention that "Defendants do not conduct even the most elementary apportionment required under Delaware law" (Emp. Opp. at 11-12) is patently false. Consistent with Delaware law,[1] Defendants' counsel provided a "good faith certification" that the fees sought were incurred for work that would have been performed even in the absence of the non-advanceable claims.[2] *See White v. Curo Tex. Holdings, LLC*, 2017 WL 1369332, at *10 (Del. Ch. Feb. 21, 2017); ECF 88.  While "some level of imprecision will be involved in the retrospective accomplishment of this task," this procedure provides "adequate protection so that [the defendant] can reserve any ultimate fight about the precise amounts until a later indemnification proceeding." *Fasciana*, 829 A.2d at 177.

Defendants' counsel *excluded* fees for work that would not have been performed in the absence of the Withdrawn Claims and provided, as specific examples of *excluded* work, time solely attributable to claims not brought against Defendants, *including RICO claims*. ECF 88 ¶ 38.  Empire provides no basis whatsoever to reject this good-faith certification, much less any "clear abuse" or "gross problem."[3]  Noticeably missing from Empire's opposition is the amount of pre-amendment fees that *Empire* incurred in the EDNY Action—

---

[1] Empire is required to advance all pre-amendment fees for all work that "would have been done independently of the existence of the non-advanceable claims" and "any doubts should be resolved in favor of advancement." *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015) (citations omitted); Def. App. at 18-20.

[2] The cases cited by Empire (Emp. Opp. at 12 n.5, 16) are not to the contrary.  *See Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 177 (Del. Ch. 2003) (where initial submission was unclear, ordering attorney affidavit certifying advanceable amount of fees in good faith); *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at *13 (Del. Ch. May 29, 2014) ("*Pontone I*") (affirming plaintiff's counsel's fees as reasonable and advanceable).

[3] Empire's only "argument" is its puerile assertion that counsel's representations are "highly dubious" due to a clarification regarding the number of weeks spent drafting the motion to dismiss.  Emp. Opp. at 13 n.8.  Meanwhile, Empire's counsel certified a fee application containing ***numerous entries clearly unrelated to the Delaware Action*** (*see* ECF 92 ¶¶ 43-57; ECF 92-8)—an act that Empire believes calls for sanctions.  Emp. Opp. at 10.

presumably because Empire's bills far exceed Defendants' invoices. *See Zaman v. Amedeo Holdings, Inc.*, 2008 WL 2168397, at \*37-\*38 (Del. Ch. May 23, 2008) (Strine, V.C.) (rejecting defendants' argument that fees were unreasonable where defendants' fees far exceeded amounts sought by plaintiff). Because Empire has failed to state the amount of its own fees, the Court should accept Defendants' figures as reasonable or, if the Court determines that more is required of Defendants, require Empire to provide the same information as to its own fees. *See, e.g., Tafeen v. Homestore, Inc.*, 2005 WL 789065, at \*6 (Del. Ch. Mar. 29, 2005) (finding $2.09 million reasonable for plaintiff where defendant incurred $2.98 million in fees, which could "be used as a yardstick").

### 1.   Empire's purported examples of non-advanceable work are without merit.

#### i.   Factual investigation of Empire's claims

Empire's contention that none of the factual allegations concerning the bootlegging conspiracy "even feature[d] Merinoff or Baird" is unsupported. *See* Emp. Opp. at 14-15. The Original Complaint alleged that Defendants breached fiduciary duties **to Empire** by, *inter alia*, failing to disclose **that same alleged bootlegging scheme**—for which they were the alleged ringleaders. *See, e.g.*, ECF 24-1 ¶¶ 13-14, 61-62, 85, 166, 169-70, 176, 184(b)-(c), 287-93. The factual allegations for the RICO claims were **the same** as those for the Withdrawn Claims. Thus, factual investigation into the bootlegging conspiracy was reasonable and necessary, and that would be true even if the EDNY Action involved *only* the Withdrawn Claims. Moreover, Empire utterly ignores the fact that Defendants' fee request **already excludes** work solely attributable to the RICO claims.

#### ii.   Motion to dismiss Original Complaint

Defendants' counsel substantially completed drafting of a motion to dismiss **all claims** in the Original EDNY Complaint by December 7, 2016. ECF 88 ¶ 50. Empire does not (and cannot truthfully) deny that prior to that date, Defendants had no way of knowing that they would not be required to file that motion shortly after the pre-motion conference or

2

that the EDNY Court would limit briefing to the federal claims. *See id.* ¶¶ 46, 49. Empire's complaint that the pre-motion letter discussed RICO claims (Emp. Opp. at 13) is irrelevant: counsel's certification *already excludes* work solely related to RICO claims.

### iii. Rule 11 Letter to Empire

Empire's argument that counsel "ma[d]e no effort to apportion the work on behalf of each client" (Emp. Opp. at 13) for its *successful Rule 11 letter* is without merit. Counsel's certification expressly *excludes* time solely attributable to non-Withdrawn Claims, including RICO claims. ECF 88 ¶ 38. The Rule 11 letter was meritorious, as shown by Empire's withdrawal of its "secret SARs" claim within the safe harbor period. Reply Dec. ¶¶ 5-15.

### iv. Empire's Motion to Unseal



■■■ *See* ECF 94-15 at 3, 7-8. ■■■

■■■ *See id.*; ECF 88 ¶ 53.[4]

### 2. No Requirement to Produce Attorney Timesheets

Despite having refused to produce its own invoices in support of its *final fee* award, Empire demands that Defendants produce their own for advancement purposes. Delaware law makes clear that the essential requirement is (as Defendants have provided, *see* ECF 88) a reasonably detailed "good faith certification" by counsel that the amounts were actually incurred in performing advanceable work—*i.e.*, work that would have been performed if only

---

[4] Despite Empire's obsessive focus, the Motion to Unseal, which Empire filed on October 14, 2016 and withdrew on November 3, 2016, made up only a small portion of the pre-amendment advancement amounts.

the advanceable claims had been litigated. *White*, 2017 WL 1369332, at *10 (citation omitted).[5] Nothing under Delaware law requires Defendants to provide (or this Court to review) counsel's billing records—which include detailed descriptions of work on pending claims in which Empire is the adversary—to receive advancement.[6] While some decisions suggest that some form of invoices was provided, many others do not. *See e.g.*, *Preferred Invs., Inc. v. T&H Bail Bonds*, 2014 WL 1292362, at *2-*4 (Del. Ch. Mar. 28, 2014) (cited in Emp. Opp. at 16) (***rejecting*** argument that timesheets were required for ***final fee award***).

Importantly, the legal invoices pertain to ***live*** claims (against Defendants, Reliable, and others) for which Empire is the adversary and represented by the same counsel as in this litigation.[7] This fact alone warrants a higher level of caution in disclosure and makes it inappropriate for Empire to seek access to Defendants' counsel's billing records (while failing to provide its own).[8] Further, even if there were some merit (and there is none) to Empire's suggestion that Defendants effected a limited waiver of privilege by seeking to enforce their contractual right to advancement, Defendants' co-defendants in the EDNY

---

[5] In addition to being unnecessary for advancement purposes, Defendants' attorneys' timesheets would not be particularly illuminating, given that they would require heavy redaction for privilege and matters for which advancement and fee-on-fees are not sought.

[6] Empire has implicitly acknowledged that billing records are not necessarily required, given that it failed to produce invoices for its claim for contract damages, despite having notice that its fees in the Delaware Action far outstripped Defendants' fees.

[7] For that reason, Empire's suggestion that the Court could simply issue a protective order under Federal Rule of Evidence 502(d) (Emp. Opp. at 16) is obviously unworkable and would be prejudicial to Defendants.

[8] Even if the Court were to determine that invoices are necessary, the cases cited by Empire (Emp. Opp. at 15-16) do *not* support a finding that Defendants must waive privilege or produce *unredacted* timesheets. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 825 n.8 (Del. 1992) ("discovery here authorized should be limited to the quantum of the expenditure, including a specification of work performed"); *White*, 2017 WL 1369332, at *7 (parties were not direct adversaries; plaintiffs could "apply to the court and establish good cause" for redacting categories from invoices); *Pontone I*, 2014 WL 2439973, at *17-*18 (plaintiff ordered to indicate whether redacted text in invoices related to non-advanceable claims); *Zaman*, 2008 WL 2168397, at *38 (***rejecting*** request for unredacted bills; "giving them access to the unredacted bills would provide them with an unfair leg up in the ongoing State Action.") *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *1, *8 (Del. Ch. Aug. 5, 2009) (Strine, V.C.) (where plaintiff sued former legal counsel, alleging overbilling, timesheets of successor counsel were discoverable).

Action who are represented by the same counsel in the EDNY Action (Breakthru, Reliable, and Breakthru's General Counsel) certainly have ***not*** effected any such waiver.[9]

### B. Empire's Allusions to Bad Faith and Sanctions Are Without Any Support.

Unable to respond to Defendants' application on the merits, and confronted with the consequences of the frivolous, dismissed action that it chose to file in the EDNY Court, Empire desperately resorts to empty bluster and unhinged hysterics. None of the cases cited by Empire involved advancement. Two of Empire's cases, *Moore* and *Pribek* (Emp. Opp. at 10, 13 n.7), are three decades old and involved applications for statutory awards of attorneys' fees on social security petitions.[10] *In re Wise* (Emp. Opp. at 12-13), involved a debtors' counsel's fee request where counsel, who admitted to non-contemporaneous time-keeping and had a long history of excessive fee applications, was sanctioned for billing for a hearing that he did not attend (and for continuing to falsely represent that he had attended the hearing after being confronted by the court). 365 B.R. 516, 524-26, 529 (E.D. Pa. Bankr. Apr. 3, 2007) (issuing sanction of $720, the amount of phantom charge). And in *Nakahara*, the court denied advancement where the trustees admitted to violating a foreign court's order and engaging in self-help by withdrawing funds from the trusts rather than awaiting the outcome

---

[9] Given that Empire is currently an active adversary, any production of invoices should be made *in camera*, and Empire should be required to provide copies of its own invoices for the same period. *See Danenberg v. Fitracks, Inc. ("Fitracks I")*, 58 A.3d 991, 995 (Del. Ch. 2012). And in any event, should this Court require more information on advancement, it should order Empire to pay the advancement demand in the interim, subject to Defendants' undertaking to repay any amounts later found non-advanceable. *See, e.g.*, *White*, 2017 WL 1369332, at *1 (noting that Delaware's "Fitracks Procedures ***require a minimum payment of 50%, with the excess over the undisputed amount held in escrow*** by Delaware counsel for the party seeking advancements.") (emphasis added). Thus, because Defendants are seeking $1,406,810.84 in advancement (ECF 88-1 at 6), ***at a minimum***, Empire should be ordered to ***immediately advance* $703,405.42**, with the other $703,405.42 to be held in escrow by Empire's counsel pending a final determination on advancement.

[10] *See Pribek v. Sec'y, Dept. of Health & Human Servs.*, 717 F. Supp. 73, 75 n.3, 77 (W.D.N.Y. 1989) (awarding reasonable fees where attorney initially claimed "starkly unreasonable" hours for routine social security petition, while imposing sanction of nearly 21% of fee award); *Moore v. Sec'y of Health & Human Servs.*, 651 F. Supp. 514, 516-17 (E.D. Mich. 1986) (upholding sanction of $1400 where attorney, whose firm had "a history of submitting unreasonable fee petitions" billed more than 40% over reasonable amount).

of their advancement claim in Delaware. *Nakahara v. NS 1991 Am. Tr.*, 739 A.2d 770, 791-92 (Del. Ch. 1998) (cited in Emp. Opp. at 4, 22). Nothing remotely similar has happened here. If anything, **Empire** should be penalized for its bad faith in "raising serial and multitudinous objections" to providing advancement. *White*, 2017 WL 1369332, at *2.

### C. Empire's Belated Argument Regarding Standing is Without Merit.

In granting pre-amendment advancement, this Court has already rejected Empire's inapposite argument regarding purported alternative sources of advancement, which it has previously raised and which it now styles as a "standing" argument. *See* Emp. Opp. at 17-19. It is well-established under Delaware law that potential availability of alternative sources of funding is irrelevant. *See, e.g., Lieberman v. Electrolytic Ozone, Inc.*, 2015 WL 5135460, at *3 n.17 (Del. Ch. Aug. 31, 2015); *DeLucca v. KKAT Mgmt. LLC*, 2006 WL 224058, at *15 (Del. Ch. Jan. 23, 2006) (Strine, V.C.); ECF 42 at 18-19.[11]

## II. EMPIRE'S POSITION ON FEES-ON-FEES IS BASELESS.

### A. Empire's "Relevant Legal Standards" Do Not Support Its Position.

Empire's assertion that "relevant legal standards" contradict Defendants' fees-on-fees application (Emp. Opp. at 20-21) is unavailing. Defendants do *not* dispute that fees-on-fees are in the nature of indemnification, *see Fasciana*, 829 A.2d at 184, and *Pontone II* and *Stifel Financial Corp. v. Cochran*, 809 A.2d 555 (Del. 2002) merely held that fees-on-fees should be proportionate with success.[12] Defendants agree with this principle, and have set forth a

---

[11] The cases cited by Empire (Emp. Opp. at 17-18 & n.12) are not to the contrary. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (case did not involve advancement, indemnification, or attorneys' fees); *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1039-40 (Del. Ch. 2014) ("*Pontone II*") (by-laws provided for advancement only where party had not obtained *mandatory* advancement from another source); *Schoon v. Troy Corp.*, 948 A.2d 1157, 1175-76 (Del. Ch. 2008) (*rejecting* standing argument where another company paid advancement); *Levy v. HLI Operating Co., Inc.*, 924 A.2d 210, 223-24 (Del. Ch. 2007) (rejecting **indemnification** claim where party already received indemnification).

[12] Faced with a multitude of Chancery Court decisions that fees-on-fees are appropriate in the LLC context, *see* Def. App. at 23 n.13, Empire cites only a completely inapposite, 20-year-old case concerning whether to issue, as a jurisdictional matter under the Delaware Family Court Rules of Criminal Procedure, a writ of mandamus directing the family court to

workable methodology to effectuate it. And in *Fitracks I*, the court unremarkably observed that it had "reviewed Danenberg's invoices carefully" before awarding fees—after stating that it "would not consider the amounts [plaintiff] incurred when evaluating reasonableness without a comparable submission" from defendant on its own fees, and noting that defendant had "unnecessarily prolonged this advancement action." 58 A.3d at 995, 1001. Defendants agree that this Court should review their application carefully, require Empire to produce its own invoices if it challenges reasonableness, and criticize Empire for its dilatory tactics.

### B. Defendants Are Entitled to All Fees Incurred in Their Successful Pursuit of Advancement, Including Those Fees Incurred in the Delaware Action.

Empire purposefully ignores the fact that counsel's work in the Delaware Action on the merits of advancement would have been performed ***regardless of whether the action was filed in Delaware***. In the Delaware Action, Defendants' counsel (1) reviewed the LLC Agreement, drafted the written undertaking, and reviewed Empire's rejection; (2) drafted a complaint in which large portions appear in the SDNY Counterclaims substantially verbatim; and (3) prepared summary judgment and motion to dismiss briefing which "was relevant to, and ultimately used for, Defendants' successful advancement claim before this Court." ECF 88 ¶¶ 65-69. Work performed in the Delaware Action on advancement transferred directly to this action for both Empire and Defendants. *Id.* ¶ 74. Excluding all work performed in and prior to the Delaware Action, as Empire urges, would improperly exclude much of the work that resulted in Defendants' successful advancement claim. Moreover, Defendants' fee application ***already excludes*** any work specific to Delaware and thus nontransferable— including all work related to Delaware venue or jurisdiction. *See id.* ¶¶ 65-75, 94-97.

Instead of attempting to rebut these points, Empire rants about sanctions[13] and

---

set aside an award of attorneys' fees. Emp. Opp. at 20 n. 13 (citing *In the Matter of the Petition of the State of Delaware for a Writ of Mandamus*, 708 A.2d 983, 989 (Del. 1998)). All the decisions cited in footnote 13 of Defendants' opening brief post-date *Mandamus*.

[13]   The provision cited by Empire, 28 U.S.C. § 1927, provides that attorneys who multiply proceedings "unreasonably and vexatiously" may be required to personally cover

7

"unclean hands."[14]  Emp. Opp. at 21-22 & n.14.  Empire conspicuously ignores that its own intransigence triggered the litigation—had Empire simply paid advancements upon receipt of undertakings back in 2016, neither this action nor the Delaware Action would have been initiated.  On one point Defendants agree with Empire: Defendants' advancement demand *was* "unitary" as to pre- and post-amendment advancement.  *See* Emp. Opp. at 23.  That is why most of Defendants' counsel work *related to advancement generally*, not pre- or post-amendment advancement in particular, and thus Empire must reimburse Defendants for it.[15]

### C. Defendants' Fee Application Already Accounts for, and Appropriately Discounts, the Modest Amount of Fees Incurred for the Sealing Motions.

Empire ignores both the context of the Delaware and SDNY sealing motions and the fact that Defendant's fee application ***already accounts for*** Empire's concerns.  *First*, the Delaware Motions to Seal were brought as a direct result of ***Empire's voluntary decision*** to litigate advancement—including pre-amendment advancement—in Delaware.  *Second*, the

---

certain fees.  Application is only "proper when the attorney's actions *are so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Revson v. Cinque & Cinque*, P.C., 221 F.3d 71, 79 (2d Cir. 2000) (emphasis in original).  It is nowhere near appropriate here.

[14]   Empire cites no authority for the idea that breach of a forum selection clause warrants a finding of unclean hands.  The cases it cites are both inapposite and concern exponentially more egregious conduct.  *See Tafeen v. Homestore, Inc.*, 2004 WL 556733, at *6 (Del. Ch. Mar. 22, 2004), *aff'd*, 888 A.2d 204 (Del. 2005) (director was sheltering assets to avoid repaying advanced funds at indemnification stage); *Nakahara*, 739 A.2d at 774-75, 791, 795 (plaintiffs showed "utter disregard of ongoing judicial proceedings" by "surreptitiously remov[ing]" nearly $1 million from defendant trust's bank account to pay attorney's fees rather than awaiting outcome of advancement proceeding); *see also Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 156-57, 163 (1990) (addressing concern that allowing "automatic award of 'fees on fees'" against government encouraged exorbitant requests, noting fee requests are never "automatic" because district courts have discretion to adjust unreasonable applications).  Empire's bizarre contention that "Defendants' unclean hands is [sic] evidenced by . . . Breakthru's retaliatory conduct against Empire's affiliate," Emp. Opp. 22 n.14, ***refers to Empire's frivolous civil rights claim under the Ku Klux Klan Act against Breakthru***.  Putting aside the fact that Empire is imputing alleged conduct by non-party Breakthru to Defendants (and imputing to itself supposed harm to an affiliate), Empire's baseless attempt to recover for "retaliatory conduct" was met with a swift *sua sponte* dismissal in the EDNY Action.  ECF 39-4 at 34-36; Reply Dec., Ex. 17 at 24.  Like Empire's claim under the Ku Klux Klan Act, its "unclean hands" defense has no basis in law or common sense.

[15]   The comparatively little work that can be attributed solely to post-amendment advancement has already been excluded from Defendants' demand.  ECF 88 ¶¶ 65-75.

Delaware and SDNY sealing motions required only a modest amount of work. Defendants' Delaware Motions to Seal and corresponding reply brief were largely copied (in many instances verbatim or substantially verbatim) from Defendants' earlier EDNY Motion to Seal, and were fully briefed in the space of nine days, with the work mostly done by Delaware counsel. ECF 92 ¶ 16. The SDNY motion, which was never fully briefed, was also largely copied from the EDNY motion. *See* ECF 58-21 at 2-9. Further, Defendants' fee application already accounts for, and discounts, the modest amount of work performed on those motions and any potentially duplicative efforts. ECF 88 ¶ 104. No further reduction is warranted.

### D. Empire Proposes No Coherent Method for Calculating Fees-on-Fees.

Rather than setting forth any coherent methodology of its own for calculating Defendants' fees-on-fees, Empire asks the Court to either contradict its prior orders by refusing to award *any* fees on fees, or award a miniscule amount (approximately 6.5% of the amount of the amount that ***Empire*** is seeking for its forum selection clause damages). Empire's proposed fees-on-fees award is "supported" only by an incoherent calculation so tortured that were the tables turned, Empire would undoubtedly have called for sanctions.[16]

*First*, there is nothing "inconsistent" in the fact that Defendants' fees in the SDNY Action were greater than those in the Delaware Action. The Delaware Action was actively litigated for less than six weeks, while this action has been pending for over a year and has involved multiple rounds of briefing and cross-motions on the merits. If Empire finds Defendants' SDNY fees unreasonable or "inconsistent," it should produce its own SDNY billing records as a yardstick. *See Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2010 WL 571934, at *4 (Del. Ch. Feb. 5, 2010) (considering opposing counsel's bills in assessing reasonableness of attorneys' fees). Tellingly, it has failed to do so.

*Second*, as noted above in Point II.B, Defendants' fees-on-fees demand is not

---

[16] "Innumerable are the lawyers who explain that they picked law over a technical field because they have a 'math block.'" *Jackson v. Pollion*, 733 F.3d 786 (7th Cir. 2013) (Posner, J.).

9

rendered invalid by the fact that its initial advancement demand was "unitary." Because the vast majority of Defendants' counsel's work was not specific to pre- or post-amendment advancement, it was applicable to pre-amendment advancement.

*Finally*, the Court should disregard Empire's facile math, which starts with the absurd claim that Defendants had a 16% success rate because they were successful in seeking advancement on "four out of 24 claims." Emp. Opp. Dec. ¶ 45 & n.1. There were ***nine*** claims asserted against Defendants between the Original and Amended EDNY Complaints. Even using Empire's reasoning (which lacks legal support), Defendants would be entitled to 33% of their fees because there were three Withdrawn Claims.[17] Crucially, Empire fails to provide any counter to Defendants' explanation of why the vast majority of advancement-related work applied to pre-amendment advancement. Empire urges the Court to disregard settled law and its prior orders and award Defendants either ***nothing*** or 5% of their request—a figure essentially pulled out of thin air. *See* Reply Dec. ¶¶ 26-35. Empire's proposal is not even within the realm of plausibility. The Court should award Defendants' full fees request.

## CONCLUSION

Based on the foregoing, the Court should order Empire to immediately advance $1,406,810.84 and award Defendants fees-on-fees through December 31, 2017 in the amount of $902,011.87 (with additional amounts for 2018 after Defendants provide supplemental information); or, in the alternative, if the Court requires more information, it should order Empire to immediately advance 50% of Defendants' advancement demand ($703,405.42) and place the other half in escrow, and order Empire to produce the same information regarding its own fees as it requires of Defendants.

---

[17] Empire also fails to explain why, having focused so heavily on the distinction between pre- and post-amendment claims, it does not believe that Defendants are entitled to at least 50% of their fees-on-fees for advancement because they were successful on one of those two categories. In any event, the appropriate proportion of fees is 70% of Defendants' total SDNY and Delaware fees. *See* ECF 88 ¶¶ 63-89, 94-105.

Respectfully submitted,

Dated: New York, New York
February 27, 2018

BOIES SCHILLER FLEXNER LLP

   /s/   Sean F. O'Shea
_____

Sean F. O'Shea
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
soshea@bsfllp.com

Helen M. Maher
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200
Fax: (914) 749-8302
hmaher@bsfllp.com

*Attorneys for Defendants Charles Merinoff and Gregory Baird*