UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
EMPIRE MERCHANTS, LLC, :
:
    Plaintiff and Counterclaim-Defendant, :
:
    -against- :
:  No. 16-CV-9590 (JMF) (SN)
CHARLES MERINOFF and :
GREGORY BAIRD, :
:
    Defendants and Counterclaim-Plaintiffs. :
:
:
-----------------------------------------------------------x

# EMPIRE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS APPLICATION FOR DAMAGES RESULTING FROM DEFENDANTS' BREACH OF CONTRACT IN IMPROPERLY SUING EMPIRE IN DELAWARE

GIBSON, DUNN & CRUTCHER LLP

Randy M. Mastro
Lawrence J. Zweifach
Avi Weitzman

200 Park Avenue
New York, NY  10166-0193
(212) 351-4000
Fax:  (212) 351-4035

*Attorneys for Plaintiff and Counterclaim-Defendant Empire Merchants, LLC*

## TABLE OF CONTENTS

                                                                                 Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

I. Because Defendants Wrongfully Filed The Delaware Action, Empire's Damages Include All The Fees It Was Forced To Incur In That Action. ........................................... 4

    A. Foreseeable Damages Are Not Limited To Litigation Of The Venue Issue .......... 5

    B. Damages Should Not Be Reduced At All—And Certainly Not By 70%—Simply Due To Litigation On Related Claims In The Separate SDNY Action. ................................................................................................................... 6

II. Empire's Fees Are Reasonable And Sufficiently Documented. ......................................... 8

    A. The Amount Empire Incurred To Defeat Defendants' Abusive Delaware Lawsuit Was Reasonable. ....................................................................................... 8

    B. Defendants' Challenges To Empire's Individual Entries Are Immaterial, Particularly Given Their *Ipse Dixit* Fee Application. ............................................ 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**Cases**

*Am. Gen. Corp. v. Cont'l Airlines Corp.*,
    622 A.2d 1 (Del. Ch. 1992) ................................................................................................. 6

*Aveta Inc. v. Bengoa*,
    2010 WL 3221823 (Del. Ch. Aug. 13, 2010) ................................................................. 7, 8

*Banas v. Volcano Corp.*,
    47 F. Supp. 3d 957 (N.D. Cal. 2014) ................................................................................. 8

*Blank Rome, LLP v. Vendel*,
    2003 WL 21801179 (Del. Ch. Aug. 5, 2003) .................................................................. 10

*Concord Steel, Inc. v. Wilmington Steel Processing Co.*,
    2010 WL 571934 (Del. Ch. Feb. 5, 2010) ....................................................................... 10

*In re Doria/Memon Disc. Stores Wage & Hour Litig.*,
    2016 WL 3963170 (S.D.N.Y. July 22, 2016) .................................................................... 8

*Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*,
    2010 WL 692752 (Del. Ch. Feb. 24, 2010) ....................................................................... 9

*Katz v. Exclusive Auto Leasing, Inc.*,
    282 A.2d 866 (Del. Super. Ct. 1971) ................................................................................. 7

*In re Kellett Aircraft Corp.*,
    186 F.2d 197 (3d Cir. 1950) ........................................................................................... 6, 9

*Margel v. E.G.L. Gem Lab Ltd.*,
    2009 WL 302069 (S.D.N.Y. Feb. 6, 2009) ........................................................................ 8

*Paul v. Deloitte & Touche, LLP*,
    974 A.2d 140 (Del. 2009) ................................................................................................... 5

*Richmont Capital Partners I, L.P. v. J.R. Inv. Corp.*,
    2004 WL 1152295 (Del. Ch. May 20, 2004) ..................................................................... 5

*Weichert Co. v. Young*,
    2008 WL 1914309 (Del. Ch. May 1, 2008) ..................................................................... 10

*Weil v. VEREIT Operating P'ship, L.P.*,
    2018 WL 834428 (Del. Ch. Feb. 13, 2018) ..................................................................... 10

**Treatises**

5 Corbin on Contracts § 1041 ..................................................................................................... 7

## PRELIMINARY STATEMENT

This Court has twice ordered Defendants to reimburse Empire for damages they wrongfully inflicted on Empire when they chose to pursue advancement in Delaware and thereby blatantly breached the parties' mandatory New York forum-selection clause.[1] As a result, Empire has now requested $747,807—all of the attorneys' fees and costs that it incurred in having to defend against Defendants' improper Delaware action. It is a request supported by lengthy billing records, detailing, on a daily basis, the amount of time charged by each attorney and the work performed. Yet Defendants now have the audacity to argue in opposition that the fees Empire has requested are too high and inadequately supported when they themselves have applied for ***more than three times*** that amount ($2.3 million) relating to what presumably should have been a limited pre-amendment advancement claim, without offering a shred of contemporaneous documentation substantiating such a huge number. In fact, they make arbitrary distinctions to try to cap and then knock down Empire's award to barely $100,000—less than 14% of the fees Empire actually incurred in Delaware—while they, at the same time, seek triple that amount in applying for 70% of their own claimed legal fees in Delaware as advancement "fees on fees." Thus, taking their contradictory positions in tandem, Defendants have the *chutzpah* to seek to reward themselves for their own wrongful breach in Delaware with nearly ***three times*** the fees they claim Empire should be limited to recovering as the victim of their breach. It is hard to imagine how Defendants could put forth such ludicrous, contradictory arguments in good faith.

Indeed, Defendants' hypocrisy seems to know no bounds. For example:

- In their own fee request, Defendants contend that they have no obligation to produce any invoices or billing records *whatsoever*. But in their opposition brief, they contend that Empire's billing records are insufficient because they are not supported by actual submitted invoices. See ECF No. 90 ("Opp.") 25 n.26.

---

[1] Unless otherwise stated, abbreviations herein are as used in Empire's initial application (ECF No. 82) ("Appl.").

1

- In their own fee request, Defendants assert that legal fee reasonableness challenges are improper because counsel's "good faith certification is sufficient." But in their opposition brief, they nitpick a handful of Empire's attorneys' daily time entries as insufficiently detailed among hundreds of such entries.

- In seeking reimbursement for the Delaware and SDNY Actions, Defendants concede that litigating the SDNY Action cost them $876,000. But in their opposition brief they attack Empire's fees in the Delaware advancement action as unreasonable, even though that amount is nearly $130,000 *less than* Defendants' own SDNY fee request.

Defendants' arguments defy not only their past positions, but also the facts and law. Defendants argue, for example, that Empire's damages should be capped at no more than the fees Defendants claim to have incurred in Delaware, which—surprise, surprise—Defendants now contend is about half of Empire's incurred Delaware fees. That is a highly suspect number, unsupported by any contemporaneous documentation, suggesting Defendants may well have arrived at it through a post-hoc reallocation of some fees from Delaware into related New York lawsuits. *See* Suppl. Decl. of Avi Weitzman ("Suppl. Decl.") ¶ 6. Indeed, Defendants' allocation is undermined by their own claim that they incurred twice as much in fees ($876,000) litigating the parallel SDNY advancement action before this Court. In any event, Defendants' efforts to halve Empire's recoverable fees in this arbitrary, self-serving and ham-handed way are unavailing.

Defendants also contend that Empire may recover only those fees incurred litigating the issue of venue, even though a host of issues necessarily needed to be briefed in Delaware. Empire's Delaware merits briefing, Defendants assert, should have overlapped and simply been recycled into subsequent briefing in the SDNY Action. But that argument ignores the reality that litigating related issues in two separate lawsuits in two different fora costs much more than litigating them once. Indeed, Defendants claim to have spent nearly as much litigating in the SDNY Action in the three month period spent litigating the parties' Rule 12(c) motions (February-April 2017) as they spent litigating the entire Delaware Action, even though, according to

Defendants, the SDNY Rule 12(c) litigation should have been a simple copy-and-paste resulting in only minimal costs. In any event, it is, of course, the foreseeable consequence of a wrongfully-filed action that the sued party will necessarily have to raise all available arguments for dismissal, so Empire is entitled to recoup its reasonable defense costs in Delaware, including merits briefing, even if the merits of advancement ended up being resolved elsewhere. Moreover, Defendants cannot seriously contend that Empire's recoverable Delaware fee should receive any further haircut simply because they ultimately won a very narrow pre-amendment advancement ruling on reconsideration—especially where, as here, they lost every other claim they raised in Delaware and the SDNY.[2] These are specious arguments unworthy of further consideration.

Finally, while engaging in the type of "persnickety disputes over the reasonableness of attorneys' fees" that Delaware courts refuse to entertain, Defendants urge this Court to require Empire "to produce copies of its attorneys' legal invoices and time entries so that Defendants and the Court can examine them for reasonableness." Opp. 25 n.26. But Empire's counsel has already voluntarily produced hundreds of detailed attorney time entries, substantiating every particular of its Delaware fee request, *see* ECF No. 83 ¶ 3 & Ex. A (Weitzman Decl. Feb. 5, 2018); in contrast, Defendants' counsel has refused to turn over even a single billing entry of their own, claiming, in essence, we and the Court have their bottom line and should have to take their word for it. Thus, the only party from whom this Court should require additional billing information is our adversary.

Put simply, these Defendants will apparently do or say anything—and twist themselves into knots in the process—to avoid paying Empire the fees it incurred as a result of Defendants' contractual breach, while, at the same time, grossly exaggerating the fees they seek under the narrow advancement ruling this Court made on reconsideration. Having improperly forced Empire

---

[2] Indeed, the only issue on which Defendants ultimately prevailed—limited pre-amendment advancement with respect to three Withdrawn Claims—wasn't even separately briefed in Delaware.

3

to litigate in Delaware, Defendants now owe Empire reimbursement for all of its fees incurred to defeat a Delaware lawsuit that never should have been brought in the first place. Moreover, Defendants are entitled to nothing whatsoever for wrongfully bringing that improper lawsuit. Accordingly, Defendants' opposition brief and fee application so severely break faith with this Court's rulings that the Court should summarily reject their arguments in opposition to Empire's fee reimbursement, order production of defense counsel's own billing records, and require these Defendants to confirm whether they actually paid—or were ever even individually billed for—any of the millions of dollars in fees for which they now seek reimbursement.[3]

## ARGUMENT

**I.    Because Defendants Wrongfully Filed The Delaware Action, Empire's Damages Include All The Fees It Was Forced To Incur In That Action.**

When Defendants breached the LLC Agreement's clear forum-selection clause by commencing the Delaware Action, it was foreseeable—even obvious—that they were subjecting Empire to all costs necessary to defend that lawsuit in that forum. That is consistent with this Court's explanation that Empire's damages are "the fees and costs it incurred as a result of [Defendants'] breach of a forum-selection clause in filing" the Delaware Action—in other words, the fees and costs necessary to defend and dismiss that improperly filed lawsuit. Jan. 4 Order at

---

[3] Defendants' refusal to produce any billing records or other documentation substantiating their own fee application and fee payments raises serious questions about the bona fides of the "bottom line" numbers they have proffered. Indeed, in arguing here that Empire's recoverable Delaware fees should necessarily be no more than the fees they now claim to have incurred in Delaware, Defendants have an incentive to artificially minimize their claimed Delaware fees—for example, by pushing fees relating to merits briefing or factual investigation into the New York actions, even if that work was also utilized in Delaware—in the hope of depressing Empire's Delaware fee recovery here. Also, without any confirming documentation, it is impossible to tell whether these individual Defendants actually paid any of the fees they now seek in the guise of "advancement," or whether, for that matter, they were ever even billed individually for any of those amounts. *See* Suppl. Decl. ¶ 10. Indeed, it is common for a corporate employer—here, Reliable Churchill or Breakthru—to be obligated to pay any legal fees incurred by corporate executives embroiled in lawsuits against the corporation, whether by written agreement or corporate by-laws. If that is the case here, Defendants simply have no standing to seek any "advancement" of fees already covered by their corporate employer, and hiding that fact by refusing to provide any documentation of actual billing and fee payments is a serious breach of trust with this Court.

4

1; *see also* Nov. 8 Order at 11–12 ("the attorney's fees and costs that Empire incurred [as] a result of the litigation in Delaware"). In this way, the scope of Empire's damages follows from basic contract law: "the non-breaching party is entitled to recover damages that arise naturally from the breach or that were reasonably foreseeable . . . ." *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (internal quotation omitted); *see* Appl. 7–8. Defendants' improper filing of the Delaware Action foreseeably caused Empire to incur all of its fees and expenses in that action, including the cost of litigating its motion to dismiss on grounds of improper venue and failure to state a claim. Empire should recover the full measure of damages for which it is out of pocket.

### A.  Foreseeable Damages Are Not Limited To Litigation Of The Venue Issue.

Defendants ask this Court to limit Empire's damages to fees incurred on the issue of venue. Opp. 6–11. That limitation ignores that Defendants' breach forced Empire, among other things: to analyze and research the complaint; to weigh many potential defenses; to investigate relevant facts; to respond to Defendants' requests for expedited treatment and sealing; to move to dismiss on two grounds (improper forum and failure to state a claim); and to prepare for hearings and oral argument on the motion to dismiss—all on an expedited timeline that Defendants sought. Every penny spent on these efforts was a foreseeable result of Defendants' breach. Empire need not have limited its motion to dismiss arguments to venue and forgo an opportunity to raise dispositive merits defenses.[4] Indeed, Defendants urged the Court of Chancery to brief the merits in a summary judgment motion concurrent with Empire's motion to dismiss. *See* Del. Dkt. Nos. 24–25.

Defendants also contend that Empire obtained only "partial success" in the Delaware Action, and should take a corresponding fees haircut. Opp. 6–9. This is nonsense. Empire was

---

[4] This case is distinguishable from *Richmont Capital Partners I, L.P. v. J.R. Inv. Corp.,* 2004 WL 1152295 (Del. Ch. May 20, 2004), in which defendants' fee award was reduced for the time defendants spent pursuing an improper and dilatory litigation strategy. *Id.* at *2–*3.

5

wholly successful—and Defendants wholly unsuccessful—when 100% of Defendants' claims in the Delaware Action were dismissed. The fact that the Court of Chancery granted Empire's motion to dismiss on one ground (improper venue) without reaching Empire's alternative merits arguments for dismissal does not render Empire's success only partial.[5]

Moreover, "considerations of justice and equity" weigh in Empire's favor. Opp. 8. It was Defendants, not Empire, who filed and aggressively litigated in an improper forum, even after Empire raised the forum-selection clause and amended its EDNY complaint. It was Defendants, not Empire, who "stretch[ed]" the language of the LLC Agreement "well beyond its terms" and "ignore[d] the clear and unambiguous language of the forum selection provision," Del. Dkt. 54 ¶ 10, and continued to pursue advancement for post-amendment claims that clearly did not arise by reason of Defendants' position as Empire Managers, Del. Dkt. 31 at 34–35. In short, it was Defendants—not Empire—who vexatiously multiplied the proceedings and should bear the full costs of their breach. *See Am. Gen. Corp. v. Cont'l Airlines Corp.*, 622 A.2d 1, 10 (Del. Ch. 1992) ("[F]undamental justice requires that, as between the plaintiff and the defendant, the perils [created by defendants' breach of contract] should be 'laid at defendant's door.'" (brackets omitted)).

  **B.**   **Damages Should Not Be Reduced At All—And Certainly Not By 70%—Simply Due To Litigation On Related Claims In The Separate SDNY Action.**

Defendants seek to avoid the damages they imposed on Empire in Delaware on the ground that Empire eventually litigated the merits of advancement in the SDNY Action, suggesting that

---

[5] Defendants' reliance on *Davis, Bowen & Friedel, Inc. v. Disabatino*, 2016 WL 7469691 (Del. Super. Ct. Dec. 27, 2016), and *Architects Studio v. Sheehy Ford*, 1989 WL 135774 (Del. Super. Ct. Oct. 23, 1989), is misplaced. In each of those cases, the plaintiff did not prevail on all claims, and thus received an award of less than all incurred fees. Here, by contrast, Empire obtained dismissal of all claims in Delaware. This Court's grant of a limited category of advancement **11 months after** complete dismissal of the Delaware Action does not change the analysis. *Cf. In re Kellett Aircraft Corp.*, 186 F.2d 197, 199–200 (3d Cir. 1950) (court should not "exalt the certainty of hindsight over the reasonable anticipation of foresight" in analyzing mitigation). In any event, Defendants did not prevail on the unitary advancement claim they asserted here and in Delaware, as this Court only ordered on reconsideration limited advancement on three Withdrawn Claims, but twice denied advancement for the claims in the FAC.

6

Empire could have costlessly recycled its briefing. Opp. 7–8. This contention is without merit.

*First*, the Delaware and SDNY Actions involved different pleadings, claims, and motion practice. For example, in Delaware the parties litigated the interpretation of a forum-selection provision, while in this Action the parties litigated the consequences of Defendants' breach of that provision. While each lawsuit touched the merits of advancement, the parties expended substantial resources researching, briefing, and arguing advancement and other issues in each court.[6]

*Second*, given the realities of complex litigation, litigating related issues in two separate lawsuits in two separate courts a is not a simple copy-and-paste job. Defendants' own fee application confirms as much, because Defendants claim to have spent *more than twice as much* in the subsequent SDNY Action as they did in the earlier Delaware Action. *See* ECF No. 88-2 (Ex. 2-E). In fact, Defendants claim to have spent $358,350.30 in the SDNY Action in February, March, and April 2017 alone—the months spent litigating the parties' respective Rule 12(c) motions—which is nearly the same amount Defendants contend they spent on the entire Delaware lawsuit. *Id.* (Ex. 2-D). Assuming the accuracy of these figures, Defendants cannot be heard to complain about the costs associated with Empire's merits briefing in Delaware.

Even if Empire had gained efficiency from its forced litigation in Delaware, such speculative gains do not diminish any damages award. *Cf. Katz v. Exclusive Auto Leasing, Inc.*, 282 A.2d 866, 868 (Del. Super. Ct. 1971) ("'Gains made by an injured party on other transactions after breach are never to be deducted from damages otherwise receivable, unless such gains could not have been made had there been no breach.'" (quoting 5 Corbin on Contracts § 1041 at 256)).

---

[6] Defendants' reliance on *Aveta Inc. v. Bengoa*, 2010 WL 3221823 (Del. Ch. Aug. 13, 2010), is misplaced. That case concerned the scope of attorneys' fees caused by a defendant's bad-faith conduct. While the court agreed to award the plaintiff fees resulting from defendant's contempt of arbitration, it did not award fees to conduct the arbitration on the merits. *Id.* at *9–*10. That in no way limits Empire's damages here, as Empire does not seek fees for litigating the advancement issue in the SDNY Action where advancement was properly litigated.

7

In any event, such efficiencies would not justify the 70% reduction concocted from Defendants' self-serving and suspect analysis of their own claimed fees, *see* Opp. 10—a reduction beyond the pale of even their own cases, which impose haircuts no greater than 25%. *Id.* 19 n.19, 20 n.23.[7]

## II.  Empire's Fees Are Reasonable And Sufficiently Documented.

### A.  The Amount Empire Incurred To Defeat Defendants' Abusive Delaware Lawsuit Was Reasonable.

Defendants object to the reasonableness of Empire's fees, claiming that Empire's billing entries reflect total hours and fees greater than Defendants' Delaware request, show excessive staffing, and are vague. Opp. 13–25. Not only is Defendants' objection detached from all principles of contract law, it is also pure hypocrisy, since Defendants have not provided even one billing record or time entry description in support of their own fee application. In any event, Empire's billing descriptions are within "the range of what a party reasonably could incur" to litigate the matter and thus eminently reasonable. *Aveta*, 2010 WL 3221823, at *6.

If Defendants actually spent less money in Delaware than Empire did, it is irrelevant.[8] Under well-established principles of mitigation—an affirmative defense on which Defendants carry the burden, *see Vici Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 298–301 (3d Cir. 2014)—a breaching party cannot cap the damages resulting from the breach based on that party's self-serving, after-the-fact damage calculation. "The rule of mitigation . . . may not be invoked by a contract breaker as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed

---

[7] *See, e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, 2009 WL 302069, at *6 (S.D.N.Y. Feb. 6, 2009) ("Where time entries are justified in principle but vague in detail, courts frequently employ a reduction of 20%."); *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, 2016 WL 3963170, at *2 (S.D.N.Y. July 22, 2016) (20% reduction for "vague entries"); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014) (20% reduction).

[8] In an effort to further reduce their Delaware fees, Defendants improperly exclude the fees they incurred researching and drafting their complaint before commencing the Delaware Action. *See* Opp. 14 & n.18.

8

wiser or would have been more advantageous to the defaulter." *In re Kellett Aircraft Corp.*, 186 F.2d 197, 198–99 (3d Cir. 1950). Indeed, it is Defendants who refused to mitigate Empire's damages by voluntarily dismissing their wrongful Delaware Action. *Cf. Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1 (Del. Ch. Feb. 24, 2010).

At any rate, Empire had good reason to spend more than Defendants in the Delaware Action. Empire carried the burden on its motion to dismiss; was forced to chase down and brief a wide array of potential arguments against the complaint; and ultimately filed two briefs (opening and reply) in comparison to Defendants' single opposition brief. Given Defendants' own legal fees in the SDNY Action of $876,000 ($125,000 more than Empire incurred in the Delaware Action)—in fact, defense counsel billed more than $435,000 in the SDNY Action in November and December 2017, when the sole issue was a motion for reconsideration that largely rehashed prior arguments, *see* ECF No. 88-2 (Ex. 2-D)—any attack on Empire's legal fees in the Delaware Action as too high defies the weight of the evidence.[9]

### B. Defendants' Challenges To Empire's Individual Entries Are Immaterial, Particularly Given Their *Ipse Dixit* Fee Application.

Defendants attempt to nitpick individual line entries in Empire's fee application, but none of their challenges warrants reduction. Defendants' primary complaint is that time entries are not split between the venue and 12(b)(6) issues. Opp. 20–22. This contention is irrelevant, given that Empire's damages properly extend to all issues litigated, *see supra* Part I.A, and Defendants' refusal to turn over any billing entries is fatally inconsistent with their position here.

Empire's detailed time entries and descriptions, backed by an attorney declaration, are more than sufficient. *See* Suppl. Decl. ¶¶ 3–4. In evaluating attorneys' fees, Delaware courts

---

[9] Boies Schiller also purportedly billed $768,440.06 relating to three minor Withdrawn Claims over a six-week period (9/20–10/31) when no motion practice or substantive litigation occurred. *See* ECF No. 88-1 (Ex. 1-C).

9

discourage scrutiny of time entries, a principle Defendants endorse when it supports their claim for fees, *see* ECF No. 86 at 2, 20, but conspicuously abandon when litigating Empire's damages, *see* Opp. 25 n.26. *See also Weichert Co. v. Young,* 2008 WL 1914309, at *2 (Del. Ch. May 1, 2008) ("A discussion of each specific invoice item that Young contests would neither be useful nor practicable."); *Blank Rome, LLP v. Vendel,* 2003 WL 21801179, at *8–*10 (Del. Ch. Aug. 5, 2003) (rejecting requirement of line-item review for contractual fee-shifting provision). Empire's fees are documented line by line, which is far more specificity than the lump sums Defendants provided.

The criticisms raised by Defendants regarding partner billing and overall staffing are petty and nowhere near the magnitude that have troubled courts in the cases Defendants cite.[10] *See Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2010 WL 571934, at *4 (Del. Ch. Feb. 5, 2010) (where senior partners billed 98% of 648 hours billed, court awarded 80% of fees requested).[11] When called upon to calculate fees, courts should not indulge "persnickety disputes over the reasonableness of attorneys' fees," including disputes over the reasonableness of "the staffing and time committed." *Weil*, 2018 WL 834428, at *12 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Empire respectfully requests that the Court grant its application and enter judgment in favor of Empire and against Defendants in the amount of $747,807.38.

---

[10] Defendants' "example[s] of excessive billing" underscore the pettiness of their criticism. They lambaste a partner's billing for legal research, a "two-day period" in which associates billed an average of barely 10 hours per associate per day for legal research, and a cite check of a motion to dismiss brief that they contend was too rigorous. Opp. 24. The decision to allocate resources in this way is reasonable and the sort of decision that courts should not second-guess. *See Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *12 (Del. Ch. Feb. 13, 2018).

[11] Traveling the lowest of all possible roads, Defendants cite a few cases over Gibson Dunn's nearly 150-year history in which courts have reduced its fee applications. Opp. 21 & n.24. Their cited cases—which they distort, *see* Suppl. Decl. ¶¶ 11–12—say no more about our firm's damages application here than the many cases criticizing fee applications submitted by Defendants' counsel (Boies Schiller) over its 25-year history say about Defendants' competing fee application. But we will take the high road and refrain from citing any of those many cases here.

Dated: New York, New York
February 27, 2018

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Randy M. Mastro
Randy M. Mastro
Lawrence J. Zweifach
Avi Weitzman

200 Park Avenue
New York, NY  10166-0193
(212) 351-4000
Fax:  (212) 351-4035
rmastro@gibsondunn.com

*Attorneys for Plaintiff and Counterclaim-Defendant Empire Merchants, LLC*