UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

EMPIRE MERCHANTS, LLC,

    Plaintiff and Counterclaim-Defendant,

    -against-

CHARLES MERINOFF and
GREGORY BAIRD,

    Defendants and Counterclaim-Plaintiffs.

------------------------------------------------------------------x

No. 16-CV-9590 (JMF) (SN)

**SUPPLEMENTAL DECLARATION OF AVI WEITZMAN
IN FURTHER SUPPORT OF EMPIRE'S APPLICATION FOR DAMAGES**

I, AVI WEITZMAN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.    I am an attorney licensed to practice law in the State of New York and admitted to practice before this Court. I am a partner in the New York office of the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Plaintiff Empire Merchants, LLC ("Empire") in the above-captioned matter. I make this declaration in further support of Empire's application for an award of its damages incurred litigating *Merinoff v. Empire Merchants, LLC*, C.A. No. 12920-VCS (Del. Ch.) (the "Delaware Action"), filed in the Delaware Court of Chancery by Charles Merinoff and Gregory Baird. *See* ECF Nos. 81–83. Except as otherwise indicated, I have personal knowledge of the information set forth herein based upon my direct involvement in the matters at issue and upon my review of the documents referenced below.

    2.    During the pendency of the Delaware Action and afterwards, Gibson Dunn sent monthly invoices to Empire reflecting the legal fees incurred in connection with the representation of Empire in related lawsuits, including *Empire Merchants, LLC v. Reliable Churchill LLLP, et*

1

*al.*, No. 16-CV-5226 (ARR) (LB) (E.D.N.Y.) (the "EDNY Action"), the Delaware Action, and this SDNY Action.

  3. To ensure that Empire's application for fees and expenses reflected only those tasks related to Empire's defense of the Delaware Action, Gibson Dunn attorneys under my supervision collected all internal billing entries for matters relating to the above-referenced lawsuits involving Empire during the time period in which the Delaware Action was pending (November 2016 through August 2017). The attorneys then identified all entries relating to the Delaware Action, based on their review of the description of work performed in the billing entries, as well as the timekeepers' notes, emails, and other contemporaneous records that reflected whether the entries concerned the Delaware Action or other work performed on behalf of Empire. Where the billing entries' descriptions concerned both the Delaware and another action (*e.g.*, entries regarding team meetings and conferences), we undertook to reasonably and conservatively allocate the amount of the time that concerned the Delaware Action in particular. We then collected all of the billing entries onto a single spreadsheet and added Delaware counsel's billing entries to that spreadsheet. (Delaware counsel was engaged only in the Delaware Action.) Later, I and other attorneys under my supervision made minor edits to the descriptions of work performed, where necessary, to preserve attorney-client privilege and/or work-product protection.

  4. Once the Delaware fees spreadsheet was created, I reviewed each entry to confirm, based on my knowledge of the case, relevant filings, and work performed by each timekeeper, that the entry, in fact, related to the Delaware Action. Indeed, we specifically excluded any work that we did not believe concerned the Delaware Action and resolved doubts against inclusion of the entry on the spreadsheet. Thus, each of the billing entries on the spreadsheet attached as Exhibit

A to my prior declaration (ECF No. 83-1) was included based on my good faith conclusion that the entry related to work done in the Delaware Action.

5.  All invoices that Gibson Dunn sent to Empire for work performed in connection with the Delaware Action have been paid by Empire.

6.  I have reviewed the declaration of Amanda L. Devereux, dated February 20, 2018 (ECF No. 92).  In that declaration, Ms. Devereux describes, among other things, the methodology she claimed was employed to segregate the Delaware fees billed by Boies Schiller from the fees incurred in the SDNY and EDNY Actions that were included on the same invoice as the Delaware fees.[1]  That claimed methodology left significant attorney discretion to decide whether a particular fee would be allocated to the Delaware Action, as compared to the EDNY or SDNY Action.  By refusing to turn over any of the contemporaneous billing entries or invoices—even in redacted form to excise privileged information—Defendants' counsel has made it impossible to determine the extent to which the allocation of fees to one or the other lawsuit was proper and reasonable.

7.  Ms. Devereux's methodology for determining the percentage of work in the Delaware Action that related to the venue issue, as compared to the merits of advancement, is particularly unsound.  It is worth noting that Ms. Devereux concedes that, in connection with the motion to dismiss briefing in Delaware, "there is no readily apparent way to accurately separate out, on an entry-by-entry basis, work that is attributable to the issue of venue rather than the issue of advancement."  ECF No. 92 ¶ 35.  Ms. Devereux nonetheless speculates that only about 40% of Defendants' work in connection with the motion to dismiss related to venue.  *Id.* ¶ 36 ("[N]o more than 40% of the work during that period was devoted to issues related to Delaware venue.").

---

[1] Ms. Devereux's declaration buries in a footnote the fact that the billing entries relating to the EDNY Action that was litigated throughout the pendency of the Delaware Action were included on the same invoices as the Delaware and SDNY Actions.  *See* ECF No. 92 ¶ 31 n.8.

As an initial matter, Ms. Devereux's 40% figure directly contradicts Defendants' own brief, which repeatedly argues "that no more than 30% of the work performed in the Delaware Action was spent on matters related to Delaware venue." *See* ECF No. 90 ("Opp.") at 1–2; *see also id.* at 10, 17.  In any event, the bases cited by Ms. Devereux to support the 40% figure are unpersuasive.  For example, to support that percentage, Ms. Devereux claimed that "less than one-third of Defendants' opposition brief was devoted to their venue argument[.]"  ECF No. 92 ¶¶ 36.  In reality, though, about half of the argument section in Defendants' opposition brief was devoted to venue (Del. Dkt. 31 at 13–27), and half was devoted to the merits of the advancement dispute (*id.* at 27–44), with a small portion also devoted to Defendants' "fees-on-fees" claim (*id.* at 44–46).  More to the point, though, the venue arguments advanced by Defendants were much more complicated and not rooted in a plain reading of the text of the forum-selection provision; as Empire explained in its reply brief, Defendants advanced a "convoluted, four-step process" that relied on "Rube Goldberg-like reasoning" to circumvent the plain language of the mandatory forum-selection provision in the LLC Agreement.  Del. Dkt. 35 at 1–2.

8. Indeed, even less persuasive is Ms. Devereux's reliance on the number of pages of the hearing transcript on Empire's motion to dismiss devoted to the venue issue, as compared to the advancement issue.  ECF No. 92 ¶ 36.  Significant issues that occupy most of the parties' attention might receive only fleeting attention at a court hearing, while lesser issues could get substantial attention at oral argument, depending on how the parties and the Court choose to proceed at the hearing.

9. One therefore cannot assume that a page count from a brief or hearing transcript translates—even roughly—into an accurate determination of the amount of time and fees incurred litigating the various bases for dismissal.

4

10. Notably, both Ms. Devereux's declaration of February 20 and her prior declaration in support of Defendants' application for advancement (ECF No. 88) fail to disclose which entity or individuals paid any of the fees invoiced by Boies Schiller. *See* ECF No. 88 ¶ 37 ("All fees and expenses . . . have been paid[.]"). Nor does the declaration identify whether other firms that purportedly worked on the Delaware Action, such as Blank Rome and Baker Botts, were engaged and paid by Defendants, as opposed to having been paid by Defendants' corporate employers, Reliable Churchill and/or Breakthru Beverage Group. Indeed, partners at Blank Rome and Baker Botts have acknowledged their long-time representation of Reliable Churchill and/or Breakthru Beverage Group, including in the related EDNY Action, but did not previously indicate any representation of these individual Defendants or otherwise describe any work whatsoever related to the Delaware Action. *See* EDNY Dkt. 158 ¶¶ 1–2 (declaration of Blank Rome partner Deborah A. Skakel); EDNY Dkt. 156 ¶¶ 1–2 (declaration of Baker Botts partner Andrew M. Lankler).

11. Defendants' opposition to Empire's fee application cites a ruling in the case of *Ceglia v. Facebook*, No. 10-CV-00569A(F) (W.D.N.Y.), which is one of several fee applications Gibson Dunn submitted there. *See* Opp. at 21. This single ruling was, in fact, only one of four rulings by the United States District Court for the Western District of New York regarding Gibson Dunn's multiple applications for fees and costs on behalf of defendants in the *Ceglia* case:

    a. On February 14, 2012, the *Ceglia* Court awarded defendants $75,776.70 in fees, 90% of the $84,196.33 sought. *See Ceglia v. Zuckerberg*, 2012 WL 503810, at *5, *19 (W.D.N.Y. Feb. 14, 2012).

    b. On May 3, 2012, the *Ceglia* Court awarded defendants $16,851.09 in fees, 44.10% of the $38,214.27 sought. *See Ceglia v. Zuckerberg*, 2012 WL 1574747, at *3, *5 (W.D.N.Y. May 3, 2012).

    c. On November 29, 2012, the *Ceglia* Court awarded defendants $96,140.88 in fees and costs, 97.47% of the $98,640.75 sought.  *See Ceglia v. Zuckerberg*, 2012 WL 5988637, at *2, *9 (W.D.N.Y. Nov. 29, 2012).

    d. On May 9, 2013, the *Ceglia* Court awarded defendants $3,747.68 in fees, 100% of the amount sought.  *See Ceglia v. Zuckerberg*, 2013 WL 1945544, at *2 (W.D.N.Y. May 9, 2013).

12. Defendants cited only the one decision awarding counsel 44% of the requested fees, but omitted the other three rulings in the very same case awarding the same counsel an average of nearly 95% of the requested fees; and across these four applications, the federal court awarded Gibson Dunn's clients more than 85% of the total fees sought.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
       February 27, 2018

                                           Avi Weitzman