UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
EMPIRE MERCHANTS, LLC,                                                  :
:
                            Plaintiff,     :                         16-CV-9590 (JMF)
:
             -v-                                                :                      OPINION AND ORDER
:
CHARLES MERINOFF, et al.,                                               :
:
                          Defendants.     :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this action, Plaintiff Empire Merchants, LLC ("Empire") sues two of its former officers, Defendants Charles Merinoff and Gregory Baird, for breach of contract. (Docket No. 81). Separately, Defendants seek advancement for their fees and costs in defending a lawsuit that Empire filed against them in the Eastern District of New York, as well as "fees-on-fees" for their efforts in obtaining advancement. (Docket No. 85). In previous opinions, familiarity with which is presumed, the Court held that Defendants were liable to Empire for breach of contract and that Defendants were entitled to advancement for some of their fees and costs. Each side now moves to fix the amount to which it is entitled: Empire for Defendants' breach of contract and Defendants for advancement. (Docket Nos. 81, 85). For the reasons discussed below, the Court grants both motions, but fixes each award at less than the amount requested.

## BACKGROUND

      The relevant background is summarized in greater detail in a prior opinion of this Court and will not be repeated here except as necessary. *See Empire Merchants, LLC v. Merinoff*, No. 16-CV-9590 (JMF), 2017 WL 5176384 (S.D.N.Y. Nov. 8, 2017) ("*Empire I*"), *reconsideration*

*granted in part and denied in part*, 2018 WL 317848 (S.D.N.Y. Jan. 5, 2018) ("*Empire II*"). On September 20, 2016, Empire filed suit against Defendants (among others) in the Eastern District of New York, alleging that Defendants participated in a long-term scheme to illegally smuggle wine and spirits from Maryland to New York (the "E.D.N.Y. Action"). (Docket No. 45, Ex. 6). Empire's Original Complaint in the E.D.N.Y. Action also alleged that Defendants had breached their fiduciary duties as board members of Empire. (*See id.* ¶¶ 84-85, 169). On December 9, 2016, Empire filed an Amended Complaint dropping the fiduciary duty claims. (Docket No. 39 ("Mastro Decl."), Ex. F).

Between the filing of the Original Complaint and the Amended Complaint, Defendants demanded that Empire advance them funds to pay for their defense in the E.D.N.Y. Action, claiming that the suit against them was "in connection with their positions as members of [Empire's] Board." (Docket No. 8 ("Am. Compl."), Ex. 3, at 1). On November 18, 2016, after Empire refused to advance Defendants funds, Defendants filed suit in the Delaware Court of Chancery, demanding advancement from Empire. (Am. Compl., Ex. 5). The Delaware Court dismissed the case, finding that the "clear and unambiguous language" of the "forum selection provision" in Empire's LLC Agreement (the "LLC Agreement") required the action to be brought in New York. (Mastro Decl., Ex. C, ¶¶ 11-12). Thereafter, on December 12, 2016, Defendants brought the present lawsuit. (*See* Docket No. 1 ("Orig. Compl.")).

In an Opinion and Order entered on November 8, 2017, the Court held that Defendants were liable to Empire for the fees and costs Empire incurred as a result of their breach of the forum-selection provision in filing suit in Delaware. *See Empire I*, 2017 WL 5176384, at *5-6. The Court also held that Defendants were not entitled to advancement because the claims against them were not "by reason of the fact" that they were officers of Empire, as required by the LLC

2

Agreement. *See id.* at *3-5.  On reconsideration, however, the Court held that Defendants were "entitled to advancement for their fees and expenses in connection with litigating Empire's pre-amendment claims" in the E.D.N.Y. Action — that is, for the time before Empire filed the Amended Complaint and dropped the fiduciary duty claims.  *Empire II*, 2018 WL 317848, at *3.  These motions followed.

## DISCUSSION

As noted, each side moves to fix the amount to which it is entitled given the Court's prior rulings.  First, Empire moves to fix damages in connection with Defendants' breach of the forum-selection clause.  And second, Defendants move to fix the amount of fees and costs that Empire must advance.  The Court will address each motion in turn.

**A. Breach-of-Contract Damages**

First, Empire seeks damages for Defendants' breach of the forum-selection clause in the LLC Agreement.  Both parties agree that Delaware law governs the calculation of Empire's damages in litigating the Delaware suit.  (*See* Docket No. 82 ("Empire's Damages Br."), at 7 n.4; Docket No. 90 ("Defs' Damages Opp'n"), at 11).  Generally speaking, under Delaware law, damages in a breach of contract action "should seek to give the nonbreaching . . . party the benefit of its bargain by putting that party in the position it would have been but for the breach." *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000); *see also Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) ("Contract damages are designed to place the injured party in an action for breach of contract in the same place as he would have been if the contract had been performed." (internal quotation marks omitted)).  And, as the Court previously concluded, "Delaware law recognizes the costs of litigation as cognizable damages for a breach

of contract action." *Empire I*, 2017 WL 5176384, at *5 (citing *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36 (Del. 1995)).

Applying those principles here, Empire is entitled to damages in the form of the attorney's fees it reasonably incurred in litigating the issue of venue in Delaware — but not, as Empire argues (*see* Empire's Damages Br. 7-11), for *all* of the fees incurred in the Delaware litigation. Empire raised two principal arguments before the Delaware court: that Delaware was an improper forum and that Defendants were not entitled to advancement under the terms of the LLC Agreement. (*See* Docket No. 88 ("Devereux Decl."), Ex. 8 ("Empire's Delaware MTD"), at 12-29). There is no dispute that Empire's (ultimately successful) efforts in litigating the first issue were directly and proximately caused by Defendants's breach of the forum-selection clause. (*See* Defs' Damages Opp'n 1 ("[Empire's] damages are limited to those related to litigating the issue of venue in Delaware.")). By contrast, Defendants' breach did not cause Empire to litigate the second issue — Defendants' entitlement to advancement under the LLC Agreement. That is, Empire would have incurred those costs even without Defendants' breach of the forum-selection clause — as the litigation in this Court makes plain. (*Compare* Empire's Delaware MTD 18-29, *with* Docket No. 47, at 5-20). Put simply, Empire cannot recover for damages that it would have sustained even without Defendants' breach. *See Universal Enter. Grp., L.P. v. Duncan Petroleum Corp.*, No. CIV.A. 4948 (VCL), 2014 WL 1760023, at *8 (Del. Ch. Apr. 29, 2014) (rejecting a remedy for a breach, under which "the plaintiffs would have been placed in a better position than the one they bargained for," because it was "less equitable . . . than holding the parties to their agreement"); *see also Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, No. CV 5886 (VCP), 2013 WL 3934992, at *24 (Del. Ch. July 24, 2013) ("A remedy for a breach should seek to give the non-breaching party the benefit of its bargain by

4

putting that party in the position it would have been but for the breach."), *aff'd*, 108 A.3d 1225 (Del. 2015).

Accordingly, the Court must estimate the percentage of Empire's work in the Delaware litigation that related to the issue of venue. The billing records submitted by Empire in connection with counsel's work in Delaware do not break down billable hours by substantive topic. (*See* Docket No. 83, Ex. A ("Empire's Billing Table") (totaling $747,807.38 in fees for Empire's work in Delaware)). That said, mindful that the Court has "substantial discretion" in calculating attorney's fees, and that "scientific precision is not required," *In re Compellent Techs., Inc. S'holder Litig.*, No. CIV.A. 6084 (VCL), 2011 WL 6382523, at *21 (Del. Ch. Dec. 9, 2011), the Court concludes that the records are sufficient to support an award of damages. *See, e.g.*, *Boeing Co. v. Spirit Aerosystems, Inc.*, No. 14C-12-055 (EMD), 2017 WL 6021423, at *2-3 (Del. Super. Ct. Dec. 5, 2017) (rejecting an argument that the court should not award fees because the billing records were "supported only by summary monthly invoices and vague descriptions," noting that a court "is not required to conduct a line-item review of the fees" and that the "reasonableness of attorneys' fees does not require that [the] Court examine individually each time entry and disbursement" (internal quotation marks omitted)); *cf. Adusumelli v. Steiner*, No. 08-CIV-6932 (JMF), 2013 WL 1285260, at *4 (S.D.N.Y. Mar. 28, 2013) (declining to impose an across-the-board reduction in attorney's fees where there was no evidence that plaintiffs' practice of block-billing "obscured . . . unreasonable billing").

The Court concludes that it is reasonable to award Empire forty percent of its total fees for the Delaware action. The Court reaches that conclusion based on several considerations. First, the venue argument comprised less than half of the argument pages in Empire's initial motion-to-dismiss and reply brief filed in Delaware. (*See* Empire's Delaware MTD 12-17;

Devereux Decl., Ex. 9 ("Empire's Delaware Reply Br."), at 5-17; *see also* Devereux Decl., Ex. 10 ("Defs' Opp'n to MTD"), at 13-27). Similarly, more than one third of the oral argument on Empire's motion to dismiss concerned Empire's venue claim. (*See* Devereux Decl., Ex. 11, at 4-15, 23-39, 48-51). On the other hand, Empire's venue argument was somewhat more complicated than its other argument, because Defendants had claimed that the LLC Agreement incorporated the Delaware General Corporation Law ("DGCL") in a roundabout manner. (*See* Defs' Opp'n to MTD 13-27). Thus, in its reply brief, Empire had to address interlocking provisions of the DGCL to succeed in its argument that the DGCL was inapplicable. (*See* Empire's Delaware Reply Br. 5-17). Accordingly, the Court concludes that forty percent (or $299,122.95) of Empire's total fees for the Delaware action constitutes reasonable damages for Defendants' breach of the LLC Agreement's forum-selection clause.

**B. Defendants' Request for Advancement**

Per the Court's decision on reconsideration, Empire must advance to Defendants expenses — including "reasonable attorneys' fees, litigation expenses and court costs," (Mastro Decl., Ex. A, § 5.5(b) — relating to litigation of Empire's pre-amendment claims in the E.D.N.Y. Action. *Empire II*, 2018 WL 317848, at *3. Based on that decision, Defendants seek more than $1.4 million in advancement and more than $900,000 in "fees-on-fees" (that is, for the fees that Defendants incurred in seeking advancement). (Docket No. 86 ("Defs' Advancement Br."), at 3). The Court concludes that Defendants' request is grossly excessive.

Once again, the parties agree that Delaware law controls. (*See* Defs' Advancement Br. 18; Docket No. 93 ("Empire's Advancement Opp'n"), at 8). Under Delaware law, to determine what constitutes reasonable attorney's fees, the Court must consider "factors set forth in the

6

Delaware Lawyers' Rules of Professional Conduct," *Mahani v. EDIX Media Grp., Inc.*, 935 A.2d 242, 245-46 (Del. 2007), including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Del. Lawyers' R. Prof'l Conduct 1.5(a). In addition to those factors, the Court must also determine "whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary." *Mahani*, 935 A.2d at 247-48 (internal quotation marks omitted). In applying these factors, the Court must balance the fact that Delaware law "favors advancement when it is provided for, with the Company's remedy for improperly advanced fees being recoupment at the indemnification stage," *Mooney v. Echo Therapeutics, Inc.*, No. CV 10054-VCP, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015), with the principle that a corporation such as Empire should not be made "to bear a credit risk it did not contract to assume," *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 175 (Del. Ch. 2003).

Significantly, when advancement is sought in litigation involving other parties not entitled to advancement or a mix of claims for which advancement is available and claims for which advancement is not available, a court must engage in a more nuanced analysis. First, when "a covered person" — that is, a person entitled to advancement — "defends a proceeding

7

with other non-covered persons, he can only recover expenses that he necessar[ily] would have incurred himself." *White v. Curo Tex. Holdings, LLC*, No. CV 12369 (VCL), 2017 WL 1369332, at *9 (Del. Ch. Feb. 21, 2017). Along similar lines, when a suit contains both claims for which the parties provided for advancement and claims which do not require advancement, a court must "determine what portion of the fees and expenses incurred by the party seeking advancement related to matters that were subject to advancement." *Pontone v. Milso Indus. Corp.*, No. CIV.A. 7615 (VCP), 2014 WL 2439973, at *10 (Del. Ch. May 29, 2014); *see also Zaman v. Amedeo Holdings, Inc.*, No. CIV.A. 3115 (VCS), 2008 WL 2168397, at *25-33 (Del. Ch. May 23, 2008) (engaging in a claim-by-claim analysis to determine entitlement to advancement). If work is done for "*both* advanceable claims and non-advanceable claims," however, "that work is entirely advanceable if it would have been done independently of the existence of the non-advanceable claims." *Mooney*, 2015 WL 3413272, at *6.

Applying those principles here, the Court concludes that Defendants' $1.4 million figure is wildly inflated. The Original Complaint named *sixty-nine* defendants in addition to Defendants here: eight corporations and partnerships, eleven other named individuals, and fifty John Doe defendants. (Docket No. 24, Ex. 1 ("Orig. E.D.N.Y. Compl.")). In addition, the main allegations in the Original Complaint (and now in the Amended Complaint) were, and are, brought under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and common-law fraud and concern Reliable Churchill's alleged smuggling of alcohol from Maryland to New York. (*See, e.g.*, *id.* ¶ 1). The Original Complaint did include eight pendent state-law claims, but only four pertained specifically to Defendants: common-law fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and negligent misrepresentation. (*Id.* ¶¶ 255-72, 286-300). And the allegations with respect to Defendants by virtue of their status as board

members of *Empire* (as opposed to their positions with Reliable Churchill) were, at best, secondary. (*See, e.g.*, *id.* ¶ 13 (noting, among other allegations, that "Merinoff, who also sat on Empire's Board of Managers, owed fiduciary duties to Empire")). Finally, the relevant period — between the Original and Amended Complaints — lasted only eighty days, during which the litigation practice was relatively light: Defendants' counsel drafted a pre-motion letter on October 27, 2016; served a letter giving notice to Empire of an intent to file for sanctions under Rule 11 of the Federal Rules of Civil Procedure on November 23, 2016; opposed a motion to unseal; and attended a pre-motion conference on December 7, 2016, having "substantially completed" a draft motion to dismiss the Original Complaint. (*See* Devereux Decl. ¶¶ 44-54).

In the face of these facts, Defendants do not come close to justifying the fees they seek. By way of example, Defendants ask for $629,288.50 in advancement for their work in the month of October 2016. During that month, Defendants claim that they "research[ed] and draft[ed] a motion to dismiss all of Empire's claims" and "filed a letter in the EDNY Action, requesting a pre-motion conference for the motion to dismiss that Defendants . . . intended to file." (Devereux Decl., ¶ 13; *see also id.* Ex. 4). Putting aside the fact that none of the seven previewed arguments for dismissal in Defendants' letter directly concerned the individual claims against Defendants (the focus was, not surprisingly, on dismissing the RICO claims), the Court cannot fathom how the research and production of the draft motion to dismiss and four-page letter could demand over 800 attorney hours. Likewise, the Court has serious doubts about the necessity of billing over 600 hours in the month of November 2016, totaling $532,926, during which Defendants drafted, but did not ultimately file, a Rule 11 letter. (Devereux Decl., ¶ 14). That is, despite Defendants' representation that they "endeavoured in good faith to separate all time incurred solely in connection with claims or matters other than the Withdrawn Claims,"

(Devereux Decl. ¶ 38), the Court cannot and does not accept that these hours were reasonable. Instead, applying the factors set forth under Delaware law — particularly "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," Del. Lawyers' R. Prof'l Conduct 1.5(a) — the Court concludes that only fifteen percent of Defendants' requested attorney's fees are "reasonable" and thus subject to advancement under the LLC Agreement. *See Mahani*, 935 A.2d at 247-48 (considering, in determining advancement, whether "the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary"). Accordingly, Empire shall advance to Defendants $228,630.69 (that is, $207,914.15 in attorney's fees and $20,716.54 in expenses incurred).

Defendants also request attorney's fees for their efforts in seeking advancement — or "fees-on-fees." (Defs' Advancement Br. 23-25). Courts award litigants who succeed in obtaining advancement attorney's fees that are subject to an "implied reasonableness requirement." *Fasciana*, 829 A.2d at 184. Delaware courts applying that reasonableness requirement typically award fees that are "reasonably proportionate to the level of success" the party achieved in obtaining advancement. *See, e.g.*, *id.*; *Pontone*, 100 A.3d at 1058 (awarding fees "[b]ased on the level of [the party seeking advancement's] success in this action"); *Marino v. Patriot Rail Co. LLC*, 131 A.3d 325, 349 (Del. Ch. 2016) ("Because [plaintiff] succeeded in part on the merits of his claim for advancements, he is entitled to an award of fees and expenses proportionate to his success."). Determining "the extent of [plaintiffs'] success . . . is a nonscientific inquiry that simply involves a reasoned consideration of the issues at stake in the case and an assessment of the plaintiffs' level of success." *Zaman*, 2008 WL 2168397, at *39.

Once again, the Court concludes that Defendants' request — for $902,011.87 in fees-on-fees — is substantially outsized. That figure represents seventy percent of Defendants' total fees "in connection with the Delaware and SDNY Actions," in which Defendants sought advancement for *all* of their legal fees in the E.D.N.Y. Action. (Defs' Advancement Br. 25). But Defendants are not entitled to recover any fees for the Delaware suit in which they breached the LLC Agreement's forum-selection clause and, as a result of that breach, were entirely unsuccessful in obtaining advancement. Defendants argue that they would have performed the work done in connection with the Delaware suit anyway, but Delaware law is clear that fees are appropriate only for "expenses incurred in *successfully*" obtaining advancement. *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (emphasis added); *Fasciana*, 829 A.2d at 184 (Delaware law "condition[s] the right to fees on fees on success"); *see also Zaman*, 2008 WL 2168397, at *39 (noting that *Cochran*, which was decided in the indemnification context, also applies to fees-on-fees request in suits for advancement). As Defendants' Delaware suit was dismissed for improper venue, it cannot be said that they were "successful[]" in obtaining advancement. *Cochran*, 809 A.2d at 561. Second, and in any event, Defendants did not come remotely close to achieving seventy percent success in their advancement suit. Defendants sought advancement for the entirety of the E.D.N.Y. Action, which included (after Empire filed its Amended Complaint) lengthy briefing on a proposed preliminary injunction and a separate motion to dismiss. (*See* Devereux Decl., Ex. 3). The Court initially denied Defendants' request in its entirety, *see Empire I*, 2017 WL 5176384, at *5-6, but, on reconsideration, awarded Defendants advancement for less than twelve weeks of litigation in which no substantive motions were filed, *see Empire II*, 2018 WL 317848, at *3. Measuring Defendants' ultimate success against their initial request — and recognizing that Defendants only demonstrated their

entitlement to twenty percent of their requested advancement in this case — the Court concludes that Defendants are entitled to only ten percent of their requested fees-on-fees in connection with the litigation in this Court. Defendants declare that they billed $876,316.80 in fees in connection with the advancement action in this Court. (Devereux Decl., Ex. 2-D). Accordingly, Empire shall pay Defendants $89,825.02 — namely, ten percent of Defendants' fees ($87,631.68), and Defendants' expenses ($2,193.34) attributable to the action in this Court.

## CONCLUSION

For the reasons stated above, both Empire's motion for damages and Defendants' motion for advancement are GRANTED, but each award is fixed at a reduced amount. Empire is awarded $299,122.95 in damages for Defendants' breach of contract, while Defendants are entitled to $318,455.71 (the total of $228,630.69 in advancement and $89,825.02 in fees-on-fees). In light of the offsetting awards, unless either party objects **within one week**, Empire shall pay Defendants, **within three weeks of the date of this Opinion and Order**, $19,332.76 (that is, the difference between $299,122.95 and $318,455.71). One housekeeping issue remains: Defendants sought leave to file several unredacted exhibits under seal, and the Court temporarily granted that request. (Docket No. 95). Because the redacted information played little role in the Court's decision and the documents "discuss sealed filings in Maryland," Defendants' application is granted permanently. *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

The Clerk of Court is directed to terminate Docket Nos. 81 and 85.

SO ORDERED.

Date: August 27, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge